THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MORASCH MEATS, INC.,

        Plaintiff,

v.

FREVOL HPP, LLC, fka FRESHER
EVOLUTION HPP, L.L.C., et al.,

        Defendants.

No. 3:16-cv-0269-PK

**FINDINGS AND RECOMMENDATION**

**PAPAK, Magistrate Judge:**

Plaintiff Morasch Meats, Inc. brings this action for breach of contract, intentional interference with contractual relations, and conversion against defendants Frevol HPP, LLC; All Natural Freshness, Inc.; Gerald Ludwick (Mr. Ludwick); and Paige Raifsnider Ludwick (Ms. Ludwick). Plaintiff agreed to purchase a high pressure pasteurization machine (HPP machine) from defendant Frevol, HPP (Frevol), and now alleges that Defendants failed to timely provide an operational HPP machine.

Page -1- FINDINGS AND RECOMMENDATION

Ms. Ludwick now moves to dismiss for lack of personal jurisdiction. For the following reasons, I recommend granting the motion.

## BACKGROUND

### I. The Claim for Intentional Interference with Contractual Relations Against Ms. Ludwick

Plaintiff brings one claim against Ms. Ludwick, for intentional interference with contractual relations.[1] Plaintiff alleges that Mr. Ludwick and Ms. Ludwick "as individuals, have intentionally interfered with MMI [i.e., Plaintiff] and Frevol's contractual relationship in one or more of the following ways:"

    a. Misapplying the MMI payments to projects other than MMI's HPP Machine installation and operation;

    b. Diverting the MMI funds and equipment (including but not limited to reports and drawings) that were not for the MMI HPP Machine, but for themselves, another entity, or HPP Detroit;

    c. Directing MMI to make payments for equipment (including but not limited to reports and drawings) that were not for the MMI HPP Machine, but for their own, another entity, or HPP Detroit machines;

    d. Using personal assets and incurring personal debt for the Equipment Agreement which they claim entitles them to payment from MMI; and

    e. Using personal assets and incurring personal debt for the Equipment Agreement which they claim entitles them to an ownership interest in the MMI HPP Machine and equipment.

Compl. ¶ 39.

---

[1]This court denied Defendants' motion to dismiss the intentional interference claim for failure to state a claim. Findings & Recommendation, ECF No. 15 (May 5, 2016), *adopted*, Order, ECF No. 26 (June 15, 2016). The ruling on the merits of the claim does not determine whether personal jurisdiction exists. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("Liability and jurisdiction are independent.").

Page -2- FINDINGS AND RECOMMENDATION

## II. Factual Background

### A. Ms. Ludwick's Declaration

Ms. Ludwick lives in Three Rivers, Michigan. Since October 2015, she has been separated from Mr. Ludwick, her husband, and now maintains a separate household. Ludwick Decl. ¶ 2, ECF No. 48. Ms. Ludwick owns and manages a Verizon Wireless store in Three Rivers. She has never been to Oregon, and she has no relatives in Oregon. She has no bank accounts in Oregon.

Ms. Ludwick has "never served in any ownership, director or officer capacity for any of the commercial defendants." Ludwick Decl. ¶ 4. Ms. Ludwick states that she did not participate in contract negotiations between the parties. She has no technical background.

Ms. Ludwick states, "I did part-time bookkeeping work for FreVol which I performed at home. On request, I used the Quik Books program to record debits and credits, and to run reports and spreadsheets that the program had available. I fielded some vendor calls for payments. I did not make collection calls. I paid vendor invoices as I was instructed from the FreVol bank account on which I was a co-signor." Ludwick Decl. ¶ 5.

### B. Plaintiff's Evidence on Ms. Ludwick's Role

In support of its opposition to Ms. Ludwick's motion to dismiss, Plaintiff submits declarations and email correspondence. William Taylor, Plaintiff's director of maintenance, states that Mr. Ludwick told Plaintiff's representatives that Ms. Ludwick handled all the finances for his businesses. Taylor states that Ms. Ludwick accompanied Mr. Ludwick to China on a 2014 visit to the HPP machine's manufacturer.

Steven Morasch, Plaintiff's CFO, states that Mr. Ludwick told him that Ms. Ludwick "handles all of the finances for their businesses, including bookkeeping, issuing payments, and

collecting debts." S. Morasch Decl. ¶ 4, ECF No. 55. Michael Morasch, Plaintiff's president and Steven Morasch's brother, states that in 2015, when Mr. Ludwick was in Oregon to discuss a possible new contract with Plaintiff, Mr. Ludwick told him that "we needed to 'make peace with Paige' [Ms. Ludwick] on all financial issues." M. Morasch Decl. ¶ 9, ECF No. 59.

Plaintiff submits the declaration of Eric Lockovitch, who was a vice president for defendant All Natural Freshness.[2] Lockovitch states that Mr. Ludwick told Plaintiff's representatives that Ms. Ludwick handled financial matters, "including bookkeeping, issuing payments, and collecting debts." Lockovitch Decl. ¶ 3, ECF No. 57.

Plaintiff submits copies of email correspondence between Ms. Ludwick, Mr. Ludwick, and Plaintiff. Ms. Ludwick sent an email dated December 22, 2015 to Mr. Ludwick, copied to Steven Morasch, stating that three of her Verizon customers who were also vendors for Defendants had complained to her that Defendants had not paid them for items used for the HPP Machine. Ms. Ludwick wrote, "I am concerned about the direction of this project and you spending anymore time and resources on it without some resolution to the existing balances and vendor status." M. Morasch Decl., Ex. C, at 2, ECF No. 59. Ms. Ludwick asked Mr. Ludwick, "Do you realize they [i.e., Plaintiff] have not paid you any payments since February of this year? Do you realize you have outstanding credit card charges amounting to over $85,000 related directly to this machine?" M. Morasch Decl., Ex. C, at 3. Ms. Ludwick then asked Mr. Ludwick to meet with the Morasches and "come up with a resolution before the end of the year. The resolution must include payment."

---

[2] Ms. Ludwick moves to strike Lockovitch's declaration as "unlawfully acquired," contending that Lockovitch violated his fiduciary duty to defendant All Natural Freshness by allowing opposing counsel to interview him for this litigation. Def. Reply 4, ECF No. 62. Because of my conclusion on the merits of the motion to dismiss, I decline to address this issue.

Page -4- FINDINGS AND RECOMMENDATION

*Id.* Ms. Ludwick concluded, "You cannot afford to continue working on a project that you are not and have not been even getting reimbursed for your costs. . . . I ask that you please take care of this and get a resolution that does not leave this debt hanging over my head." *Id.*

Steven Morasch forwarded Ms. Ludwick's email to Michael Morasch, who then emailed Ms. Ludwick in late December 2015, asking that she call him. Ms. Ludwick responded to Michael Morasch by email dated January 6, 2016, stating, "This communication is an attempt to get answers to questions that I have. [Mr. Ludwick] has been unable to provide me with these answers." *Id.*, Ex. C, at 1. Ms. Ludwick continued,

> It is unfortunate that I have been pulled into this, as it is counterproductive to my own business getting involved in this. I have been pulled in for two reasons 1. Jerry [i.e., Mr. Ludwick] uses many [businesses] here locally as his vendors, and many of them are my customers at Verizon also. I regret that these people are now reaching out to me for payment concerns. 2. When Jerry failed to get the 30% installment from Morasch when the machine was shipped (this is my understanding from the agreement), we floated many of the costs on credit cards that are now carrying a large balance and have large finance charges associated with them. My expectation was that once the final payment was received all these charges would be taken care of and vendors would be paid in full. Unfortunately, that has not happened.

*Id.* Ms. Ludwick noted, "I also realize I do not know everything about the project as I am on the outside." *Id.*

Michael Morasch states that Ms. Ludwick telephoned him in late January 2016, telling him that she had incurred a debt of about $160,000 on two credit cards "for purchases that she believed were related to the HPP machine." M. Morasch Decl. ¶ 12. Michael Morasch states, "Her purpose in calling me was to collect on bills that she believed [Plaintiff] owed to her personally on the HPP machine contract. Ms. Ludwick's claimed credit card expenses were never stated on the total invoice summary presented by Mr. Ludwick to Steven Morasch and Michael Morasch." *Id.*

## MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A defendant may move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). There are two types of personal jurisdiction, general and specific. Here, Plaintiff does not contend that this court has general jurisdiction over Ms. Ludwick, so only specific jurisdiction is at issue.

When a defendant moves to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). If the court bases its determination on written materials rather than an evidentiary hearing, the plaintiff must make only "a prima facie showing of jurisdictional facts." *Id.* (quotation marks and citation omitted). Although a plaintiff cannot rest solely on the bare allegations of its complaint, the court must take uncontroverted allegations in the complaint as true. *Id.* "'Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

## DISCUSSION

In a diversity action, this court's assertion of personal jurisdiction must comply with the requirements of the Oregon long-arm statute and federal due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Because Oregon authorizes personal jurisdiction to the limits of federal due process, this court may proceed directly to the federal due process analysis. *Id.*; Or. R. Civ. P. 4L.

This court uses a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant is proper:

Page -6- FINDINGS AND RECOMMENDATION

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)). If the plaintiff shows that it can satisfy the first two prongs of the test, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Here, because Plaintiff's only claim against Ms. Ludwick sounds in tort, this court applies the purposeful direction test, "and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (applying purposeful direction test to claim for intentional interference with contract). Under this test, "a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803) (further citation and quotation marks omitted). In applying this test, the court must "'look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1122 (2014) (alteration in *Picot*)).

I now turn to the factors for determining purposeful direction.

### 1. Intentional Act

The test for an intentional act is "essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). Here, Ms. Ludwick allegedly diverted Plaintiff's payments to defendant Frevol for personal gain, interfering with the contract between Plaintiff and defendant Frevol. This allegation is sufficient to show an intentional act. *See id.*

### 2. Express Aiming

If the defendant committed an intentional act, the court then looks to "whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Id.* (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). Here, the issue is whether Ms. Ludwick "expressly aimed" her alleged interference with the contract at Oregon. *Id.*

The complaint alleges that Mr. Ludwick and Ms. Ludwick misapplied Plaintiff's payments to defendant Frevol to projects other than the HPP machine, and that they used personal assets and incurred personal debt "for the Equipment Agreement which they claim entitles them to payment from [Plaintiff]," and "to an ownership interest" in the HPP machine. Compl. ¶ 39. Although Plaintiff claims it was injured in Oregon by Ms. Ludwick's alleged conduct, a "mere injury to a forum resident is not a sufficient connection to the forum" because "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S. Ct. at 1125. Here, Ms. Ludwick's only Oregon contacts were several emails and a telephone call to Michael Morasch. A plaintiff cannot establish personal jurisdiction when the plaintiff is "the only link between the defendant and the forum. Rather, it is the defendant's conduct

Page -8- FINDINGS AND RECOMMENDATION

that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*, at 1122. Ms. Ludwick had no contacts with anyone in Oregon other than Michael Morasch, and her contacts with him were minimal. Taking the evidence in the light most favorable to Plaintiff, I conclude Plaintiff has failed to show that Ms. Ludwick "formed [any] jurisdictionally relevant contacts" with Oregon. *Walden*, 134 S. Ct. at 1124.

Plaintiff emphasizes that Mr. Ludwick described Ms. Ludwick as playing an important role in Defendants' businesses, but Plaintiff has not shown why her role, without more, would justify asserting jurisdiction over her. The existence of personal jurisdiction over Mr. Ludwick does not show personal jurisdiction over Ms. Ludwick. *See Maguire v. Coltrell*, No. 14–cv–01255–PHX–DGC, 2015 WL 1966471, at *4 (D. Ariz. April 30, 2015) ("Marriage alone does not create an agency relationship between the married couple."). Because the effects of Ms. Ludwick's alleged conduct are "'not connected to the forum State in a way that makes those effects a proper basis for jurisdiction,'" Plaintiff "has failed to make a prima facie showing of specific personal jurisdiction" over Ms. Ludwick. *Picot*, 780 F.3d at 1215 (quoting *Walden*, 134 S. Ct. at 1125).

## CONCLUSION

For the reasons provided above, Ms. Ludwick's Motion to Dismiss, ECF No. 47-1, should be granted. The claim against Ms. Ludwick should be dismissed without prejudice for lack of personal jurisdiction.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of January, 2017.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page -10- FINDINGS AND RECOMMENDATION