THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MORASCH MEATS, INC.,

      Plaintiff,

v.

FREVOL HPP, LLC, fka FRESHER
EVOLUTION HPP, L.L.C., et al.,

      Defendants.

No. 3:16-cv-0269-PK

**OPINION AND ORDER**

PAPAK, Magistrate Judge:

Plaintiff Morasch Meats, Inc. brings this action asserting claims for breach of contract

and fraud against Defendants Frevol HPP, LLC (Frevol); All Natural Freshness, Inc. (ANF); and

Gerald Ludwick (Ludwick).[1] Plaintiff, which agreed to purchase a high-pressure pasteurization

(HPP) machine from Defendants for $1,550,000, alleges that Defendants breached the parties'

agreement by failing to install an operational HPP machine, and that Defendants knowingly

---

[1] This court has dismissed Defendant Paige Raifsnider Ludwick for lack of personal jurisdiction.
F&R, ECF No. 77; Order Adopting F&R, ECF No. 79.

misrepresented their expertise in manufacturing HPP machines, and their financial resources, to induce Plaintiff to purchase the HPP machine. Plaintiff also alleges that Defendant Ludwick controls Frevol and ANF, the other two defendants, and that Ludwick failed to adequately capitalize Frevol and ANF and milked them of their assets, justifying piercing the corporate veil as to Plaintiff's claims.

Plaintiff now moves for partial summary judgment on its theory of piercing the corporate veil, and on the existence and terms of the parties' contract. Defendants move to dismiss Plaintiff's fraud claim as untimely, and move for summary judgment on (1) Plaintiff's claim for breach of contract against ANF; (2) Plaintiff's claim that Frevol is responsible for failing to meet the deadline for installing the HPP machine; (3) Plaintiff's claim for fraud; and (4) Plaintiff's assertion of a piercing the corporate veil theory.

After the hearing on these motions, counsel notified the court that the parties had reached stipulations on several of the disputed issues. Defendants stipulate to the following:

(1) granting summary judgment on Plaintiff's motion to remove the statute of frauds affirmative defense from the case;

(2) granting summary judgment on Plaintiff's motion to adjudge the October 14, 2014 Contract (the Contract), without modification, to be the operative contract between Plaintiff and Frevol;

(3) granting summary judgment on Plaintiff's motion to adjudge the contract terms listed in Plaintiff's Motion for Partial Summary Judgment, at 30-31, ECF No. 137, as the relevant terms of the Contract between Plaintiff and Frevol, although Defendants may assert affirmative defenses at trial;

(4) withdrawing Defendants' request for summary judgment on requested modifications to the Contract, while preserving the right to argue these facts at trial as they relate to the parties' course of performance; and

(5) withdrawing Defendants' request for summary judgment on whether the Contract's provisions setting the delivery date and commissioning deadline of December 31, 2014, were rendered moot, while leaving this court free to adjudge any other term of the Contract.

Plaintiffs stipulate to dismissing ANF from the breach of contract claim, and to dismissing ANF as to the piercing the corporate veil theory on the breach of contract claim.

In light of these stipulations, the parties seek this court's rulings on Defendants' motion to dismiss Plaintiff's fraud claim as untimely; Defendants' motion for summary judgment on Plaintiff's fraud claim; and the parties' cross-motions for summary judgment as to Plaintiff's piercing the corporate veil theory. For the following reasons, as to the remaining issues in dispute, I deny Defendants' motions to dismiss and for summary judgment, and I grant Plaintiff's motion for partial summary judgment on its theory of piercing the corporate veil.

## DISCUSSION

### I. Defendants' Motion to Dismiss Fraud Claim Based on the Statute of Limitations

Defendants move to dismiss Plaintiff's fraud claim, contending that Plaintiff brought the claim after Oregon's two-year statute of limitations for fraud claims had run. I deny Defendants' amended motion to dismiss.

#### A. Background

Plaintiff alleges that in April 2013, Eric Lockovitch, vice president of ANF, emailed Michael Morasch, Plaintiff's president and one of its owners, introducing Frevol's "newest HPP

equipment line." This was the beginning of the parties' negotiations on Plaintiff's purchase of Defendants' HPP machine. Second Am. Compl. ¶ 7. Plaintiff alleges that during the parties' negotiations over the next 18 months, Defendants made material, false representations that induced Plaintiff to purchase the HPP machine. *Id.* ¶ 44. Plaintiff alleges five categories of fraudulent assertions made by Defendants: (1) that Defendants could deliver an HPP machine that complied with federal and state rules, including certification from the American Society of Mechanical Engineers (ASME); (2) that Defendants were supported by a team of highly qualified professionals, although Ludwick worked alone and knew the workers he would recruit for the HPP machine project were not highly qualified professionals; (3) that Defendants had previously provided customers with an "incredible value" although Defendants had supplied at least one customer with an HPP machine that could not be ASME certified; (4) that Defendants could honor warranties, fully indemnify Plaintiff for costs incurred, honor a one-year guarantee against defects, and were adequately capitalized by the financial resources of Ludwick and his wife; and (5) that Defendants could provide spare parts for two years. Second Am. Compl. ¶ 44(a)-(e).

Plaintiff contends that Defendants' alleged false representations played a material role in its decision on September 16, 2014, to make a $1 million down payment towards the purchase of an HPP machine, and its subsequent decision on October 15, 2014, to enter into the Contract with Frevol to purchase an HPP machine for $1,550,000. ECF No. 125-1 (the Contract). Plaintiff contends that until it sent Defendants the $1 million down payment, the parties had not "made any commitment to each other, and the Parties were in no way obligated to take any action regarding the potential HPP Machine purchase." Pl.'s Resp. 4, ECF No. 142.

After Plaintiff agreed to purchase the HPP machine, Ludwick spent more than a year

attempting unsuccessfully to install the HPP machine at Plaintiff's Portland facility. By letter dated February 14, 2016, Ludwick terminated the Contract. The next day, Plaintiff filed its initial complaint in this action.

In their motion to dismiss, Defendants contend that Plaintiff's fraud claim is time-barred because Plaintiff should have discovered the alleged fraud before February 15, 2014. Defendants do not dispute that the fraud claim Plaintiff asserts in the Second Amended Complaint relates back under Federal Rule of Civil Procedure 15 to the filing date of Plaintiff's initial complaint. *See* Defs.' Reply 2, ECF No. 143.

### B. Legal Standards for Motions to Dismiss for Failure to State a Claim

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To show plausibility, the plaintiff must do more than show "a sheer possibility that a defendant has acted unlawfully." *Id.*

The court is not required to accept a complaint's legal conclusions. *Id.* "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

### C. Discussion

The applicable statute of limitations provides:

> An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law

based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit.

Or. Rev. Stat. § 12.110(1). A plaintiff bringing a fraud claim discovers an injury when the plaintiff either knows or should have known of three elements: (1) harm; (2) causation; and (3) tortious conduct. *Padrick v. Lyons*, 277 Or. App. 455, 465-66, 372 P.3d 528, 535 (citing *Gaston v. Parsons*, 318 Or. 247, 255, 864 P.2d 1319, 1323 (1994)), *review denied*, 360 Or. 26, 381 P.3d 821 (2016) (table). "'[T]he facts that a plaintiff must have discovered or be deemed to have discovered include not only the conduct of the defendant, but also, under *Gaston*, the tortious nature of that conduct.'" *Id.*, 277 Or. App. at 466, 372 P.3d at 535 (quoting *Doe v. Lake Oswego Sch. Dist.*, 353 Or. 321, 331, 297 P.3d 1287, 1295 (2013)). The court looks to "'how a reasonable person of ordinary prudence would have acted in the same or a similar situation.'" *Id.* (quoting *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278, 265 P.3d 777 (2011)). "A plaintiff has a duty to act diligently to discover the relevant facts." *Id.*, 372 P.3d at 536. "The nature of the plaintiff's relationship with the defendant is relevant to the question whether the plaintiff has acted with sufficient diligence." *Id.*

"Whether a plaintiff has discovered an injury generally presents a factual question for the jury . . . ." *Padrick*, 277 Or. App. at 466. A court may, however, resolve the issue of discovery as a matter of law if "'the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter.'" *Id.* (quoting *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 296, 181 P.3d 758, 765 (2008)).

Here, Defendants contend that Plaintiff should have investigated Defendants' statements

during the parties' negotiations before Plaintiff made the $1 million down payment. Defendants argue that taking Plaintiff's allegations as true, Plaintiff had "concerns and questions all along the way pre-February 15, 2016." Defs.' Reply 11, ECF No. 143. Defendants contend that Plaintiff

> did not investigate beyond discussions with defendants; although it had sufficient leads to explore. In essence, plaintiff did nothing and stuck its head in the sand from April 2013 until February 14, 2014, despite recognizing and voicing concerns about the viability of the machine, the background and financial competency of the defendants, being told about serious problems with an [Austin, Texas] HPP machine, and fear about wear parts and repairs.

Defs.' Am. Mot. Dismiss 8 (footnote omitted), ECF No. 130.

Plaintiff responds that it could not have experienced cognizable harm, and therefore could not have discovered the fraud, until it made the $1 million down payment on September 16, 2014, well within the two-year statutory period. Plaintiff contends that "[w]ithout the element of damages, there can be no fraud claim." Pl.'s Resp. 9, ECF No. 142. Plaintiff argues that it could not have been aware of harm until it made the down payment, so it could not have discovered Defendants' alleged fraud before September 2014.

Defendants argue that Plaintiff should have known before making the down payment that Defendants were lying about their net worth, expertise, and past successes, and that Plaintiff should have realized that Defendants could not supply an acceptable HPP machine. I disagree. Taking Plaintiff's pleadings as true, as I must on a motion to dismiss, from April 2013 until September 2014, Plaintiff was negotiating with Defendants about purchasing an HPP machine. A factfinder could determine that Plaintiff reasonably believed Defendants could fulfill the promises they made during the negotiations. For example, Plaintiff's knowledge of problems with Defendants' Texas HPP machine (which was not the same model as the HPP machine at

issue here) does not necessarily show that Plaintiff should have known Defendants were lying about their ability to complete Plaintiff's project. I conclude that Defendants have not shown Plaintiff should have discovered the alleged fraud through its own investigations before Plaintiff made the down payment in September 2014. I deny Defendants' motion to dismiss Plaintiff's fraud claim.

## II. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's claim for fraud and on Plaintiff's piercing the corporate veil theory. I agree with Plaintiff that disputed issues of material fact preclude summary judgment on the fraud claim. I will address Plaintiff's corporate veil theory below in my discussion of Plaintiff's motion for partial summary judgment.

### A. Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may not credibility determinations or weigh evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B. Discussion

As noted above in the discussion of Defendants' motion to dismiss, Plaintiff asserts five categories of alleged fraudulent assertions made by Defendants: (1) Defendants could deliver an HPP machine that complied with federal and state law, including certification from the American

Society of Mechanical Engineers (ASME); (2) Defendants were supported by a team of highly

qualified professionals; (3) Defendants had provided previous customers with an "incredible

value" although Defendants had supplied at least one customer with an HPP machine could not

be ASME certified; (4) Defendants could honor warranties, fully indemnify Plaintiff for costs

incurred, honor a one-year guarantee against defects, and were properly capitalized by the net

worth of Ludwick and his wife; and (5) Defendants could provide spare parts for two years.

Second Am. Compl. ¶ 44(a)-(e).

In Oregon, the elements of fraud are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
> of its falsity or ignorance of its truth; (5) his intent that it should be acted on by
> the person and in the manner reasonably contemplated; (6) the hearer's ignorance
> of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his
> consequent and proximate injury.

*Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or. 332, 350, 225 P.2d 757, 764 (1950);

*Tower Ins. Co. of New York v. Rose City Auto Group, LLC*, No. 14-cv-00975-MO, 2015 WL

4910475, at *2 (D. Or. April 17, 2015). "A plaintiff must establish each element of fraud by

clear and convincing evidence. Intent to defraud may be established by circumstantial evidence."

*Global Exec. Mgmt. Solutions, Inc. v. Int'l Bus. Mach. Corp.*, 260 F. Supp. 3d 1345, 1383 (D. Or.

2017) (*Global Exec.*) (citations omitted).

Defendants argue that "Plaintiff's fraud claim is primarily based on promises claimed to

be unmet or future promises the Defendants allegedly could not fulfill. Failure to perform future

promises to perform are [*sic*] not fraudulent misrepresentations." Defs.' Reply 8.

I disagree with Defendants' premise that Plaintiff bases its fraud claim on statements

about future intent. Plaintiff alleges that in deciding to purchase the HPP machine, it relied on

Ludwick's statements about his and his "team's" expertise in manufacturing HPP machines, his previous success in doing so, and his and his wife's financial resources to honor the warranties, guarantee, and indemnification provisions, when allegedly none of these statements was true. A plaintiff "may establish fraud by showing that 'at the time of the making of the promise, there was no present intention of performance *or, alternatively*, that the promise was made with reckless disregard as to whether the promissor could or could not perform.'" *Global Exec.,* 260 F. Supp. 3d at 1383-84 (quoting *Webb v. Clark*, 274 Or. 387, 393 n.2, 546 P.2d 1078, 1080 n.2 (1976) (emphasis added by *Global Exec.*)). Here, there are disputed issues of material fact whether Defendants made false promises to Plaintiff with at least "reckless disregard" whether they could perform, to persuade Plaintiff to purchase the HPP machine.

Defendants argue that Plaintiff, as an established business, had the upper hand in the parties' negotiations because Frevol and ANF were start-up corporations. Defendants also contend that Plaintiff was at least as knowledgeable as Defendants in the design, manufacture, and operation of HPP machines, and therefore could not have justifiably relied on Defendants' representations. These arguments present material issues of disputed fact that are not appropriate for summary judgment. *See Global Exec.*, 260 F. Supp. 3d at 1386 ("Given that the standard is reasonableness and is determined based on the totality of both parties' conduct, this issue is reserved for the factfinder because reasonable but competing inferences may be drawn."); *Oregon Pub. Emps.' Ret. Bd. ex rel. Oregon Pub. Emps.' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428, 83 P.3d 350, 361 (2004) ("Oregon case law adheres to a consistent principle: Reliance in fact must be reasonable, but such reasonableness is measured in the totality of the parties' circumstances and conduct."). I deny Defendants' motion for summary

judgment as to Plaintiff's fraud claim.

## III. Motions for Summary Judgment on Piercing the Corporate Veil

Plaintiff asserts a piercing the corporate veil theory as to both of its claims.[2] Plaintiff

contends it is entitled to summary judgment that the piercing the corporate veil theory applies.

Defendants argue that Plaintiff has failed to show as a matter of law that Ludwick should be

liable for the conduct of the two corporate defendants. I deny Defendants' motion for summary

judgment as to the piercing the corporate veil theory, and I grant Plaintiff's motion for partial

summary judgment as to piercing the corporate veil as to Ludwick's liability.

### A. Choice of Law

#### 1. The Internal Affairs Doctrine Does Not Apply

"Federal courts sitting in diversity look to the law of the forum state . . . when making

choice of law determinations." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir.

2014). I therefore apply Oregon choice-of-law rules.

Plaintiff contends Oregon law applies to its piercing the corporate veil theory.

Defendants contend that Michigan law applies because Frevol[3] and ANF are businesses based in

---

[2] Plaintiff characterizes its piercing the corporate veil assertions as a "claim." *See, e.g.,* Pl.'s Mot. 32, ECF No. 137. As I have noted, however, "disregard of corporate formalities, or piercing the corporate veil, is a mechanism for recovery of damages, and is not an independent cause of action." *Robinson v. Charter Practices Int'l, LLC*, 3:14-cv-1736-PK, 2015 WL 1799833, at *17 (D. Or. April 16, 2015), *aff'd*, 696 F. App'x 226 (9th Cir. 2017).

[3] Plaintiff states that it is unclear whether the internal affairs doctrine may be applied to Frevol, which is a limited liability company rather than a corporation. *See* Pl.'s Reply 4 n.3. While not addressing this precise issue, this court has determined that under Oregon law, "[t]he veil-piercing doctrine may be applied to LLCs under the same circumstances in which it is applied to corporations." *Saldana v. Slinghuff*, No.10-cv-1146-ST, 2011 WL 4625706, at *2 (D. Or. Aug. 29, 2011), *adopted*, 2011 WL 4625702 (D. Or. Sept. 30, 2011). For purposes of these motions, I will assume that the internal affairs doctrine could apply to an LLC.

Michigan, and Michigan law should govern questions of internal corporate governance.

I did not find a decision applying Oregon law that addressed choice of law for piercing the corporate veil. There is a split of authority on the proper choice of law for piercing the corporate veil issues. *See* Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice of Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 90-91 (2008-09). Courts that apply the law of the state of incorporation generally rely on the internal affairs doctrine, as Defendants do here. "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Here, Plaintiff brings claims against ANF and Frevol as a third party. Under these circumstances, the internal affairs doctrine does not govern choice of law. As this court has noted,

> "Corporations and individuals alike enter into contracts, commit torts, and deal in personal and real property. Choice of law decisions relating to such corporate activities are usually determined after consideration of the facts of each transaction. In such cases, the choice of law determination often turns on whether the corporation had sufficient contacts with the forum state, in relation to the act or transaction in question, to satisfy the constitutional requirements of due process. The internal affairs doctrine has no applicability in these situations. Rather, this doctrine governs the choice of law determinations involving matters *peculiar* to corporations, that is, those activities concerning the relationships *inter se* of the corporation, its directors, officers and shareholders."

*Summit Props., Inc. v. New Tech. Elec. Contractors, Inc.*, No. CV-03-748-ST, 2004 WL 1490327, at \*25 n.12 (D. Or. July 2, 2004) (quoting *McDermott Inc. v. Lewis*, 531 A.2d 206, 214

-215 (Del. 1987) (emphasis in *McDermott*) (citation omitted)). I apply Oregon choice of law statutes to determine the governing law here.

## 2. Oregon Choice of Law

As to Plaintiff's breach of contract claim, under Oregon law, "the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen." Or. Rev. Stat. § 15.350(1). In the Contract at issue, the parties agreed that Oregon law applies. Second Am. Compl., Ex. A, at 18 ("Laws of the State of Oregon will be applicable to the sales contract."). Even if the parties had not expressly chosen Oregon law, Oregon law would apply because the Contract was to be performed in Oregon and Defendants allegedly breached the Contract in Oregon. *See* Or. Rev. Stat. § 71.3010(2) (if the parties have not agreed on choice of law, the Oregon Uniform Commercial Code "applies to transactions bearing an appropriate relation to this state"); Or. Rev. Stat. § 15.360 (general rule for choice of law in contract claims).

As to Plaintiff's fraud claim, Oregon law applies because the alleged fraud and the resulting injury occurred in Oregon, and Plaintiff is domiciled in Oregon. Or. Rev. Stat. § 15.440(3)(a) ("If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state."). I therefore apply Oregon law to Plaintiff's piercing the corporate veil theory as to both the breach of contract and fraud claims.

## B. Oregon Law on Piercing the Corporate Veil

Under Oregon law, the standard for piercing the corporate veil is:

> When a plaintiff seeks to collect a corporate debt from a shareholder by virtue of the shareholder's control over the debtor corporation rather than on some other theory, the plaintiff must allege and prove not only that the debtor corporation was

under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder.

*Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94, 108, 654 P.2d 1092, 1101 (1982).

"[I]n Oregon, piercing the corporate veil 'is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury.'"

*Hambleton Bros. Lumber Co. v. Balkin Enter., Inc.*, 397 F.3d 1217, 1228 (9th Cir. 2005) (quoting *Amfac Foods*, 294 Or. at 103, 654 P.2d at 1098).

### C.  Application of Oregon Law to Piercing the Corporate Veil

To show that piercing the corporate veil is justified as a matter of law, Plaintiff must establish the three elements of the *Amfac Foods* test:  control, wrongful conduct, and causation. *Amfac Foods*, 294 Or. at 108-09, 654 P.2d at 1101.  As to control, I conclude that Plaintiff has shown as a matter of law that Ludwick actually controlled Frevol and ANF, shown by his sole ownership of ANF, his role as managing partner and sole member of Frevol, and his day-to-day operation of both companies. *See BLD Prods, LTC v. Technical Plastics of Oregon, LLC*, No. 05-cv-556-KI, 2006 WL 3628062, at *5 (D. Or. Dec. 11, 2006) (determining as a matter of law that the individual defendant controlled the business at issue).   As to wrongful conduct, Plaintiff has also shown as a matter of law that Ludwick commingled his personal assets with the assets of Frevol and ANF. *See Amfac Foods*, 294 Or. at 109-10, 654 P.2d at 1102 (wrongful conduct includes "commingling of assets").  Plaintiff has shown that Ludwick had no personal bank accounts, but rather paid himself and his personal bills, including his mortgage, from Frevol's bank account. *See* Pl.'s Mot. Summ. J. 6, ECF No. 137.  As to causation, however, I conclude that Plaintiff has not shown as a matter of law that Ludwick's wrongful conduct caused Plaintiff

to be unable to collect from Frevol and ANF because Plaintiff has not yet established Defendants' liability, if any, to Plaintiff. The causation issue must await the determination of liability by a jury. *BLD Prods.*, 2006 WL 3628062, at *6. I therefore conclude that Plaintiff "is entitled to pierce the corporate veil, making [Ludwick] personally liable, but that the amount [if any] for which [Ludwick] is personally liable will have to be determined by the jury." *Id.*

## CONCLUSION

For the reasons provided above, Defendants' Amended Motion to Dismiss, ECF No. 130, is DENIED. Defendants' Second Motion for Summary Judgment, ECF No. 136, is GRANTED as to Plaintiff's claim for breach of contract against Defendant ANF, and as to Plaintiff's piercing the corporate veil theory as to the claim for breach of contract against Defendant ANF, and otherwise DENIED. Plaintiff's Motion for Partial Summary Judgment, ECF No. 137, is GRANTED in part as to piercing the corporate veil, and GRANTED as to the existence and terms of the parties' contract and as to Defendants' statute of frauds defense.

IT IS SO ORDERED.

Dated this 22nd day of March, 2018.

_____
Honorable Paul Papak
United States Magistrate Judge