Dayna J. Christian, OSB #97336
Nicole McMillan, OSB #114573
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
Fax: (503) 802-5351
E-Mail: dayna.christian@immixlaw.com
E-Mail: nicole.mcmillan@immixlaw.com

Attorneys for Plaintiff Morasch Meats, Inc.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| MORASCH MEATS, INC., an Oregon corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>FREVOL HPP, LLC fka FRESHER EVOLUTION HPP, L.L.C., a Michigan limited liability company, dba NEXT HPP; ALL NATURAL FRESHNESS, INC., a Michigan corporation; and GERALD R. LUDWICK, an individual,<br><br>        Defendants. | Case No.: 3:16-cv-00269-PK<br><br>**PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS**<br><br>*Oral Argument Requested* |

PLAINTIFF MORASCH MEATS INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

# TABLE OF CONTENTS

I. CERTIFICATE OF COMPLIANCE ........................................................................... 1

II. MOTION FOR SANCTIONS ................................................................................... 2

III. STATEMENT OF AUTHORITY ........................................................................... 3

IV. BACKGROUND .................................................................................................... 6

    A.   Defendants' Counsel created difficulties and interposed inefficiencies throughout the discovery and deposition phase of this litigation. ......................... 6

    B.   Defendants' Counsel has filed frivolous and unsupported motions and pleadings and pressed unsubstantiated legal positions throughout this litigation. ................................................................................................................ 8

    C.   Defendants' Counsel failed to meaningfully confer regarding important issues in Morasch's own motion filings, again causing Morasch to incur needless expenses. .......................................................................................... 11

    D.   Defendants' Counsel failed to submit proper responses to Morasch's Requests for Admissions. .......................................................................... 14

    E.   Defendants' Counsel improperly accused Morasch's counsel of illegal wiretapping. ............................................................................................. 15

    F.   Defendants' Counsel failed to meaningfully confer regarding the Parties' pre-trial submissions, again causing Morasch's counsel to incur unnecessary time and fees. .................................................................... 16

    G.   Defendants' Counsel engaged in improper tactics to delay and avoid the trial of this matter, again needlessly increasing Morasch's litigation expenses. ............................................................................................. 17

V. MEMORANDUM OF LAW .................................................................................. 22

    A.   The Applicable Rules ......................................................................... 22

        1.   Federal Rule of Civil Procedure 11 ....................................... 22

        2.   Local Rule 83-3, Local Rule 83-7, and the Oregon District Court's Statement of Professionalism ....................................... 24

    B.   Defendants' Motion to Dismiss failed to meet the minimum standards for pleadings, and sanctions are warranted. ............................................... 25

    C.   Defendants' Motion for Summary Judgment failed to meet the minimum standards for pleadings, and sanctions are warranted. ......................... 27

    D.   Defendants' Counsel has disregarded the Local Rules. ........................ 29

    E.   Morasch is entitled to an imposition of sanctions against Defendants' Counsel. ............................................................................................. 31

VI. CONCLUSION ..................................................................................................... 34

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

# TABLE OF AUTHORITIES

## Cases

*Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*, 498 U.S. 533, 553 (1991) .................... 23

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) ....................................................... 22

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ...................................... 23

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) ............................ 22

*Franklin v. Pinnacle Entm't, Inc.*, 289 F.R.D. 278, 286 (E.D. Mo. 2012) ................ 23, 24, 29, 30

*Gaston v. Parsons*, 318 Or. 247, 255–56 (1994) ....................................................... 26

*Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987) ................................. 23

*In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997) ....................................................... 4

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050 (9th Cir. 2005),
    *amended and superseded by* 416 F.3d 940 (9th Cir. 2005) ..................................... 26

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1106–07 (9th Cir. 2005) ................................ 4

*Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ................................................ 24

*Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) ....................................... 23

*See Wolgast v. Richards*, No. 05-10278-BC, 2012 U.S. Dist. LEXIS 5704, at *6
    (E.D. Mich. Jan. 18, 2012) ....................................................................... 4, 5

*St. Amant v. Bernard*, 859 F.2d 379, 382 (5th Cir. 1988) ........................................... 23

*Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) ..................... 23, 24

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363–66 (9th Cir. 1990)..................... 24

*Willy v. Coastal Corp.*, 503 U.S. 131, 131–32 (1992)................................................ 4, 5

## Statutes

11 U.S.C. § 362(a) ......................................................................................... 4

ORS 12.110........................................................................................... 26

## Other Authorities

Statement of Professionalism, General Guidelines 1.13............................................ 25

## Rules

FRCP 11.................................................................................... passim

FRCP 11 Advisory Committee Notes (1983 Amendment) ....................................... 22

FRCP 11(b) ................................................................................. 23

FRCP 11(b)(1) ......................................................................... 22, 23

FRCP 11(b)(2) ................................................................................. 23

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

FRCP 11(b)(3) ........................................................................................................... 23

FRCP 11(c)(2) ....................................................................................................... 2, 9

FRCP 11(c)(4) ........................................................................................................... 24

Local Rule 7-1 .............................................................................................................. 1

Local Rule 83 ...................................................................................................... 30, 31

Local Rule 83-3 ................................................................................................. passim

Local Rule 83-7 ................................................................................................. passim

Oregon District Court's Statement of Professionalism ............................ 22, 24, 25, 31

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

# I.  CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7-1, counsel for Plaintiff Morasch Meats, Inc. ("Morasch" or "Plaintiff") certifies that it conferred in good faith with Michelle E. Vocht ("Ms. Vocht") and Alexander C. Trauman[1] ("Mr. Trauman") (collectively, "Defendants' Counsel"), counsel for Frevol HPP, LLC ("Frevol"), All Natural Freshness, Inc. ("All Natural Freshness"), and Gerald R. Ludwick ("Mr. Ludwick") (collectively "Defendants," and together with Plaintiff, the "Parties") via telephone regarding the matters addressed in this Motion for Sanctions (Plaintiff Morasch Meats, Inc.'s Motion for Sanctions (Docket No. 156) and this supplement thereto are collectively referred to herein as the "Motion for Sanctions").  Plaintiff's counsel sought to confer with Defendants' Counsel regarding the additional content included in Plaintiff's Supplemental Motion for Sanctions, but Defendants' Counsel declined to confer.  The Parties were unable to resolve their differences and the Court's attention is required.

At oral argument before this Court on January 30, 2018, Plaintiff agreed to set the briefing on this Motion for Sanctions to occur after the trial in this case concluded.  In late June 2018, the litigation against Defendants was stayed after they each filed for bankruptcy in the United States Bankruptcy Court for the Western District of Michigan.  *See Minutes of Proceedings* (Docket No. 253).  After confirming that this action was stayed with respect to the Defendants on June 21, 2018, the Court invited Plaintiff to supplement its Motion for Sanctions (which only addresses conduct of Defendants' Counsel and is collateral to the substantive case against Defendants), set a briefing schedule, and scheduled oral argument for August 15, 2018.  *See id.*

---

[1] On May 1, 2018, Mr. Trauman filed a motion to withdraw as counsel of record for Defendants. *See Motion of Motschenbacher & Blattner LLP to Withdraw as Counsel of Record for Defendants* (Docket No. 197).  On May 4, 2018, the Court held a telephonic hearing in which it provisionally granted Mr. Trauman's motion and admonished Defendants to find new local counsel within twenty days.  *See Minutes of Proceedings* (Docket No. 200).  Mr. Trauman was officially released as counsel of record for Defendants on June 1, 2018, despite Defendants' failure to obtain new local counsel.  *Order* (Docket No. 217).  While Mr. Trauman no longer represents Defendants, that does not in any way release him from being held accountable for his conduct before this Court that is the subject of this Motion for Sanctions.

Pursuant to Federal Rule of Civil Procedure ("FRCP") 11(c)(1), Plaintiff certifies that Defendants and Defendants' Counsel received notice of this Motion for Sanctions. Such notice was provided in Plaintiff's Response to Defendants' Amended Motion Under Fed.R.Civ.Pro. 12(B)(6) – Statute of Limitations Fraud (Docket No. 142, at Section E) and in Morasch Meats, Inc.'s Amended Response to Defendants' Motion for Summary Judgment–Counts I and II (Docket No. 150, at Section VI). Plaintiff further certifies that its Motion for Sanctions was submitted in compliance with the service and filing requirements of FRCP 11(c)(2), and it was supplemented upon invitation by the Court and in accordance with its scheduling order.

## II. <u>MOTION FOR SANCTIONS</u>

Having provided notice of its intent to seek sanctions in its responses to both Defendants' Amended Motion Under Fed.R.Civ.Pro. 12(B)(6)–Statute of Limitations Fraud (Docket No. 130) ("Motion to Dismiss") and Defendants' Motion for Summary Judgment–Counts I and II (Docket No. 136) ("Motion for Summary Judgment"), and having been invited by this Court to supplement its initial request for sanctions, Morasch files this Motion for Sanctions pursuant to FRCP 11(c); the United States District Court for the District of Oregon's ("Oregon District Court") Local Rules 83-3 and 83-7; and the Oregon District Court's Statement of Professionalism.

Morasch moves this Court for an order of sanctions against Defendants' Counsel, requiring them to pay Morasch's attorneys' fees incurred unnecessarily due to Defendants' Counsel's improper motions, pleadings, and tactics and to ensure the attendance and meaningful participation of local counsel at every court appearance moving forward, once the bankruptcy stay is lifted.

In Section V.F. below, Morasch fully details its request for sanctions against Defendants' Counsel in the amount of $512,370.81. If requested by the Court, Morasch will submit for *in camera* review a detailed attorneys' fee petition identifying the full measure of fees attributed to its pursuit of each of the above-listed items for which sanctions are requested.

Page 2 of 35 – PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

## III.  <u>STATEMENT OF AUTHORITY</u>

As a threshold matter, this Court has authority to decide Plaintiff's Motion for Sanctions while the litigation against Defendants is stayed by their bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Michigan.  Plaintiff's Motion for Sanctions is not subject to the automatic stay imposed upon the litigation against Defendants by their bankruptcy filings because it only addresses the conduct of Defendants' Counsel.  As such, it is collateral to the litigation against Defendants and may be heard and decided by this Court during the pendency of Defendants' bankruptcy proceedings before the United States Bankruptcy Court for the Western District of Michigan.

The filing of a bankruptcy petition imposes an automatic stay only as to the following actions related to the property of the debtor and/or the bankruptcy estate:

> **(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title;

> **(2)** the enforcement, *against the debtor or against property of the estate*, of a judgment obtained before the commencement of the case under this title;

> **(3)** any act to obtain possession of *property of the estate or of property from the estate* or to exercise control over *property of the estate*;

> **(4)** any act to create, perfect, or enforce any lien against *property of the estate*;

> **(5)** any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

> **(6)** any act to collect, assess, or recover a claim *against the debtor* that arose before the commencement of the case under this title;

> **(7)** the setoff of any debt *owing to the debtor* that arose before the commencement of the case under this title against any claim *against the debtor*; and

> **(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability *of a debtor* that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability *of a debtor* who is an individual for a taxable period ending before the date of the order for relief under this title.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

11 U.S.C. § 362(a) (emphasis added). Importantly—and as emphasized above—the automatic stay *only* applies to actions concerning properties, claims, judgments, assets, and/or liabilities of the bankruptcy debtor and/or the bankruptcy estate and does not apply to properties, claims, judgments, assets, and/or liabilities of third parties. *See id.* The automatic stay is intended to provide breathing room to a debtor by temporarily ceasing all collections efforts, harassment, and foreclosures against him. *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997).

Federal district courts have the power to decide whether particular matters before them fall within the scope of an automatic stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1106–07 (9th Cir. 2005) ("[A] district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction."). This authority includes the power to decide whether a pending FRCP 11 sanctions motion is subject to an automatic stay imposed by the Michigan bankruptcy courts. *See Wolgast v. Richards*, No. 05-10278-BC, 2012 U.S. Dist. LEXIS 5704, at *6 (E.D. Mich. Jan. 18, 2012).

As relevant to the matter at hand, a district court may impose FRCP 11 sanctions against counsel despite the imposition of an automatic stay on an underlying action against a bankruptcy debtor. FRCP 11 sanctions are "collateral to the merits of the case" and only address "the issue [of] whether the court's rules were violated" by counsel; thus, a district court's "interest in having rules of procedure obeyed [does] not disappear with the subsequent determination that it lack[s] subject-matter jurisdiction." *Willy v. Coastal Corp.*, 503 U.S. 131, 131–32 (1992) (court syllabus). As stated by the United States Supreme Court:

> "[It] is well established that a federal court may consider collateral issues after an action is no longer pending. . . . [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." . . . Such an order implicates no constitutional concern because it "does not signify a district court's assessment of the legal merits of the complaint." . . . It therefore does not raise the issue of a district court adjudicating the merits of a "case or controversy" over which it lacks jurisdiction.

*Id.* at 138 (internal citations omitted); *see also Wolgast*, 2012 U.S. Dist. LEXIS 5704, at *11

(United States District Court for the Eastern District of Michigan stating that a "bankruptcy filing does not automatically stay [a] Plaintiff's motion" for Rule 11 sanctions even when the underlying case is stayed).  With that said, an FRCP 11 sanctions motion may not be heard over an automatic stay when the issues raised therein would require the court to decide the merits of a substantive motion impacting the bankruptcy debtor's position in the underlying stayed litigation.  *Wolgast*, 2012 U.S. Dist. LEXIS 5704, at *16–17.

Under the principle that sanctions issues are collateral to an underlying substantive case, the United States Supreme Court has upheld the imposition of sanctions upon counsel who filed voluminous, unindexed, unnumbered, and otherwise confusing and careless pleadings that were an "'affront to the judicial process, [the] Court, and opposing counsel'" and that were "'irresponsible at a minimum and at worst intentionally harassing'"; these sanctions were upheld despite the fact that the district court was later determined to lack subject matter jurisdiction over the case.  *See Willy*, 503 U.S. at 133, 139 (internal citations omitted).

In the present case, it is clear that Plaintiff's Motion for Sanctions is not subject to the automatic stay.  First, this Motion for Sanctions does not fall within the scope of the automatic stay because (as fully detailed below) it does not apply to or in any way impact properties, claims, judgments, assets, and/or liabilities of Mr. Ludwick, Frevol, or All Natural Freshness and/or their bankruptcy estates.  Instead, it only addresses the conduct of Defendants' Counsel before this Court and does not request that this Court make any new determinations regarding substantive matters that would affect Defendants' position in the underlying litigation.  To the extent that motions and/or legal issues in the underlying litigation are discussed in the Motion for Sanctions, they have either already been ruled upon by this Court or are *only* discussed for the purpose of detailing Defendants' Counsel's conduct in relation thereto.  Thus, the issues raised in this Motion for Sanctions are entirely collateral to the underlying case against Defendants, and this Court has clear authority to decide this Motion for Sanctions at the present time.

Page 5 of 35 – PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

# IV.  BACKGROUND

Throughout this litigation, Defendants' Counsel has engaged in a consistent pattern of failure to abide by FRCP 11, the Oregon District Court's Local Rules 83-3 and 83-7, and the Oregon District Court's Statement of Professionalism.  As fully detailed below, Defendants' Counsel's motions, pleadings, and tactics throughout this litigation have been replete with factual inaccuracies, incorrect assertions of law, baseless legal arguments, and typographical errors.  These filings have forced Morasch's counsel to spend significant time and effort responding to and correcting the inaccurate picture that they have repeatedly painted for this Court.  The Court must act now to correct and deter Defendants' Counsel's pattern of practice and encourage a more efficient, cost-effective, and professional litigation process.  Only by imposing sanctions will Defendants' Counsel be deterred from further misconduct, dissuaded from draining additional court resources, and discouraged from practicing in a manner that substantially and unnecessarily increases parties' litigation expenses.

**A.**  **Defendants' Counsel created difficulties and interposed inefficiencies throughout the discovery and deposition phase of this litigation.**

Defendants' Counsel made errors and caused inefficiencies throughout the discovery phase of this case.  For example, Defendants' Counsel repeatedly made errors in their production of documents to Morasch.  *Declaration of Dayna J. Christian in Support of Plaintiff Morasch Meats, Inc.'s Supplemental Motion for Sanctions* ("*Christian Decl.*"), ¶ 3; *see, e.g.*, *id.* ¶ 36, Ex. 8.  On multiple occasions, Defendants' Counsel relied upon Morasch's counsel to track and monitor their use of Bates Numbers in their document production set.  *Id.* ¶ 3.  Each time, Morasch's counsel was required to research Defendants' Counsel's document production history, confirm their Bates Number usage, and provide the information needed to prepare Defendants' Counsel's next document production set.  *Id.*  Even when Morasch's counsel provided Defendants' Counsel with the correct Bates Number sequence, they still made errors and often submitted documents under duplicative Bates Numbers.  *Id.*  In some cases, Morasch's counsel informed Defendants' Counsel that their Bates Number sequence was off and they re-produced

corrected documents, thereby forcing Morasch's counsel to review the document set twice and pay its third-party discovery vendor for associated follow up work. *Id.* In other cases, Defendants' Counsel declined to correct duplicative Bates Numbers that were brought to their attention by Morasch's counsel. *Id.*

To date, Defendants' Counsel has duplicated forty-eight uncorrected Bates Numbers, requiring Morasch's counsel to add the letter "A" to the end of their erroneous Bates Numbers to identify them as duplicative. *Id.* These discovery errors resulted in inefficiencies, generated unnecessary legal fees for Morasch, and disrupted Morasch's counsel's own workflow. *Id.* Despite these repeated difficulties, Morasch's counsel consistently sought to be helpful to Defendants' Counsel and avoided bringing these issues before this Court. *Id.* This conduct has caused Morasch to incur fees in the amount of $2,655.00, for which Defendants' Counsel should be sanctioned.

As an additional example of Defendants' Counsel's unprofessionalism during the discovery process, Ms. Vocht's conduct during the depositions in this case was improper and at times violated the rules governing deposition conduct. For example, Ms. Vocht mishandled an exhibit during Morasch's deposition of Mr. Ludwick on behalf of Frevol by removing the exhibit in question from the deposition room to prepare him for her re-direct examination. *Id.* ¶ 5. Following this incident, Ms. Vocht led Mr. Ludwick in her re-direct to contradict his prior testimony and take an entirely unsupported position, strongly suggesting that she coached him to change his testimony. *Id.* ¶ 37, Ex. 9 at 4–12 (46:13–47:1, 181:19–186:4).

Similarly, during each of the depositions taken by Morasch's counsel in this litigation, Ms. Vocht was disruptive, improperly objected to deposition questions, corrected answers and caused deponents to change testimony, and repeatedly refused to lodge objections that complied with deposition rules. *See, e.g.*, *id.* ¶ 38, Ex. 10 at 2–4 (187:11–189:7) (improper objection); *id.* at 5–6 (217:6–218:1) (improperly corrected witness answer); *id.* ¶ 37, Ex. 9 at 2–3 (20:25–21:21) (improper objection); *id.* at 6 (123:8–24) (improper objection). Mr. Trauman did not participate in the depositions taken in this case in any way, despite the fact that as local counsel it was his

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

responsibility to meaningfully participate in all phases of the case (including assisting Ms. Vocht during depositions). *Id.* ¶ 6. Despite Defendants' Counsel's unprofessional and improper conduct during discovery and depositions, Morasch's counsel did not complain to the Court, instead pressing forward to avoid further distraction and prevent the cost that discovery violation motion practice would have imposed upon the case. *Id.* Although Morasch is entitled to seek sanctions for this conduct, no monetary sanctions are requested. Instead, Morasch asks that the Court admonish Defendants' Counsel for failing to involve local counsel and require that local counsel meaningfully participate in all proceedings once the bankruptcy stay is lifted.

**B.** **Defendants' Counsel has filed frivolous and unsupported motions and pleadings and pressed unsubstantiated legal positions throughout this litigation.**

Throughout this litigation, Defendants' Counsel has filed frivolous motions and pleadings and improperly pressed legal issues on which their positions were entirely unsupported by Oregon law. In many cases, Defendants' Counsel ultimately conceded defeat after Morasch's counsel was forced to incur many hours of work to correct their unsupported positions. In other cases, Morasch's counsel was forced to bring these matters before the Court, which ultimately agreed with Morasch and ruled that Defendants' Counsel's positions and pleadings were improper under Oregon law and/or the applicable rules.

First, in August 2017 Defendants' Counsel filed the Motion for Leave to Amend Counterclaim despite the fact that Defendants had no counterclaim on file that could have been the subject of a motion to amend. *See Motion for Leave to Amend Counterclaim* (Docket No. 100). Morasch's counsel was required to fully brief this issue for the Court and participate in oral argument on this matter, incurring legal fees in the amount of $13,785.00. *See Plaintiff's Response to Defendants' Motion for Leave to Amend Counterclaim* (Docket No. 103); *Christian Decl.*, ¶ 12. Following oral argument, the Court provided Defendants' Counsel with extra days in which to bring forth legal support for their tenuous position. *See Minutes of Proceedings* (Docket No. 115). Despite the opportunity to submit supplemental briefing in support of their position, Defendants' Counsel not only failed to come forward with any additional support but

withdrew their motion entirely. *See Order* (Docket No. 118). Thus, although Morasch had intended to move for FRCP 11 sanctions on this issue, it did not file such a motion because the pleading to be challenged was withdrawn. *See* FRCP 11(c)(2) (providing that sanctions must not be sought if the challenged paper is withdrawn). Morasch does not seek the imposition of monetary sanctions for the fees it incurred to respond to this motion but asks the Court to reprimand Defendants' Counsel for their irresponsible motion practice.

Second, in September 2017 Defendants' Counsel insisted that Mr. Ludwick was not required to participate in the depositions of Frevol or All Natural Freshness under the "apex witness doctrine" and filed with this Court a Motion for Protective Order. *See Defendants' Motion for Protective Order* (Docket No. 104). Defendants' Counsel did so despite Morasch's counsel's objections and clear explanation of the applicable laws. *See Christian Decl.*, ¶ 7; *id.* ¶ 29, Ex. 1; *id.* ¶ 30, Ex. 2. As a result of Defendants' Counsel's filing, Morasch's counsel was required to fully brief this issue for the Court. *See Plaintiff's Response to Defendants' Motion for Protective Order* (Docket No. 105); *Declaration of Dayna J. Christian in Support of Plaintiff's Response to Defendants' Motion for Protective Order* (Docket No. 106); *see also Reply to Plaintiff's Response to Defendants' Motion for Protective Order* (Docket No. 107). Defendants' Counsel's legal theory was not supported by Oregon law or the facts of this case, and the Court issued an order denying the motion. *Order* (Docket No. 108). Despite the unsubstantiated nature of Defendants' Counsel's arguments on this issue, Morasch was required to incur legal fees in the amount of $5,962.50 to respond to them, as fully detailed in Section V.F. below. *Christian Decl.*, ¶ 7. Further, Morasch's counsel was forced to take time away from other meaningful discovery and trial preparation. *Id.*

Third, despite Morasch's counsel's advice regarding Oregon law on this issue, in December 2017 Defendants' Counsel insisted upon pressing the position that they were entitled to take post-discovery depositions, which Ms. Vocht referred to as "*de bene esse* depositions." *Id.* ¶ 31, Ex. 3 at 2. Ms. Vocht first mentioned this form of depositions in an email to the Court dated October 24, 2017, while the Parties were discussing potential trial dates and the number of

Page 9 of 35 – PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

anticipated trial days.  *See id.*  Morasch's counsel researched this Latin phrase and found that *de bene esse* depositions are used in Ms. Vocht's home jurisdiction of Michigan.  *Id.* ¶ 4.  On December 21, 2017—months after the close of discovery—Ms. Vocht sent Morasch's counsel an email demanding to take *de bene esse* depositions in Pennsylvania and Massachusetts.  *Id.* ¶ 32, Ex. 4 at 2.  Morasch's counsel was once again required to research Ms. Vocht's demand, evaluate her ability to take depositions after the close of discovery, and provide findings to Ms. Vocht to dissuade her from pursuing these late depositions.  *Id.* at 1.  Morasch's counsel encouraged Ms. Vocht to "either familiarize yourself with the Local Rules or confer more closely with your local counsel, [Mr. Trauman], who is responsible for your *pro hac vice* status."  *Id.*  Morasch's counsel further issued the following warning to Ms. Vocht: "[Morasch] has now incurred fees as a result of my team's work to call this Local Rule to your attention.  This will be included in any subsequent Motion for Sanctions that we may file against all counsel and their law firms."  *Id.*  Ms. Vocht acquiesced and acknowledged her error, and Morasch's counsel did not seek sanctions.  *Id.* ¶ 4.  While Defendants' Counsel ultimately conceded this issue, Morasch's counsel was still required to incur fees in the amount of $1,365.00, as fully detailed in Section V.F. below.  *Id.*

Fourth—and at the very core of this Motion for Sanctions—in December 2017, Defendants' Counsel filed the Motion to Dismiss and the Motion for Summary Judgment, both of which required incredibly significant responses from Morasch's counsel.  Both motions were complex and unsupported by Oregon law, contained a plethora of legal and factual inaccuracies, and were ultimately denied by this Court.  *See Opinion and Order* (Docket No. 188).  The unsupported legal contentions, factual inaccuracies, and other errors in Defendants' Motion to Dismiss and Motion for Summary Judgment—as well as Morasch's counsel's efforts in responding to correct them—are fully detailed in Sections V.B. and V.C. below and need not be repeated here.  To overcome these frivolous motions, Morasch's counsel was forced to incur $32,818.00 in fees to conduct legal research, prepare responsive briefings, and participate in oral argument on the Motion to Dismiss and seeks $200,000.00 in sanctions for the efforts made in

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

relation to the parties' motions for summary judgment, as fully detailed in Section V.B. and V.C. below. *Christian Decl.*, ¶¶ 11, 16.

Fifth and finally, on April 4, 2018, Defendants' Counsel filed Defendants' Answer, which erroneously included a new counterclaim and several affirmative defenses that were improperly expanded at a very late date in the litigation. *See Answer.* Morasch's counsel explained to Defendants' Counsel that these newly added items were improper and would need to be removed, but Defendants' Counsel refused to amend the Answer to delete them. *Christian Decl.*, ¶ 13. As such, Morasch's counsel was forced to prepare and file Plaintiff Morasch Meats, Inc.'s Motion to Strike and Motion to Dismiss (Docket No. 195) ("Motion to Strike"), as well as Plaintiff's Reply in support thereof (Docket No. 204). Further, in their Response, Defendants' Counsel included an improperly pled request for leave to amend to add a counterclaim, which did not comply with this Court's Local Rules. *See Response to Plaintiff's Motion to Strike and Motion to Dismiss or, in the Alternative, Motion for Leave to Amend to File Counterclaim* (Docket No. 202), 8. Again, Morasch's counsel was forced to brief an issue and incur legal fees due to Defendants' Counsel's disregard for Oregon law and the rules that apply to proceedings held before this Court. *See Plaintiff Morasch Meats, Inc.'s Reply in Support of Plaintiff's Motion to Strike and Motion to Dismiss* (Docket No. 204), 5–6. Ultimately, the Court agreed with Morasch and ordered Defendants' Counsel to correct and amend the Answer. *Order* (Docket No. 205). Due to Defendants' Counsel's erroneous filing, Morasch's counsel was forced to incur legal fees in the amount of $33,908.00, as fully detailed in Section V. below. *Christian Decl.*, ¶ 13.

C.   **Defendants' Counsel failed to meaningfully confer regarding important issues in Morasch's own motion filings, again causing Morasch to incur needless expenses.**

Defendants' Counsel also failed to meaningfully confer with Morasch's counsel regarding critical issues in Morasch's motion filings, again causing Morasch to incur unnecessary legal fees. Defendants' Counsel repeatedly represented during meet-and-confer sessions regarding motions to be filed by Morasch that a mutual agreement was impossible, only

to concede and suggest a stipulated agreement after Morasch's counsel had completed extensive legal research, fully briefed the issue, and filed a motion seeking this Court's assistance. This forced Morasch's counsel to exert significant effort and Morasch to incur substantial legal fees that could have been avoided if Defendants' Counsel had meaningfully conferred on these issues.

Defendants' Counsel failed to meaningfully confer with Morasch's counsel regarding two crucial issues that Morasch intended to raise in its summary judgment motion. Prior to preparing Plaintiff Morasch Meats, Inc.'s Motion for Partial Summary Judgment (Docket No. 137) ("Plaintiff's Motion for Summary Judgment"), Morasch's counsel conferred with Defendants' Counsel several times by telephone regarding Morasch's intent to seek summary judgment with respect to (1) Defendants' statute of frauds affirmative defense and (2) the fact that the unmodified October 15, 2014 contract was the final contract between Morasch and Frevol. *Christian Decl.*, ¶¶ 14, 15. During each conversation, Defendants' Counsel informed Morasch's counsel that they intended to stand behind their statute of frauds affirmative defense and would not agree that the unmodified October 15, 2014 contract represented the final contract between Morasch and Frevol. *Id.* Accordingly, Morasch's counsel incurred substantial time to conduct legal research, compile documentary support, prepare declarations and exhibits, and write the associated sections of Plaintiff's Motion for Summary Judgment. *Id.*

Mere days before the summary judgment deadline—well after the Parties had conferred and after Morasch's counsel had completed the bulk of the work required to move against Defendants' statute of frauds affirmative defense—Defendants' Counsel informed Morasch's counsel that they had decided to withdraw their statute of frauds affirmative defense after researching the issue under Oregon law. *Id.* ¶ 12, Ex. 40; ¶16, Ex. 44. This entire section of Morasch's summary judgment brief was removed, and Morasch's counsel could have avoided incurring all fees associated with its preparation if Defendants' Counsel had researched their own affirmative defense prior to pleading it and/or been well-prepared for the Parties' conversations. *Id.* ¶¶ 14, 15.

Further, after all of the summary judgment briefings had been completed, Defendants'

Counsel informed Morasch's counsel that they would concede that the unmodified October 15, 2014 contract represented the final contract between Morasch and Frevol and further concede that the contract terms identified by Morasch were included therein and represented the relevant terms for purposes of this litigation.  *Id.* ¶ 45, Ex. 17; *see also Opinion and Order* (Docket No. 188), 2–3.  Again, these entire sections of Morasch's summary judgment briefing were rendered unnecessary, and Morasch's counsel could have avoided incurring the fees associated with preparing them if Defendants' Counsel had been diligent in their own research and prepared for the Parties' pre-filing conferences.  *Christian Decl.*, ¶¶ 14, 15.  To address these summary judgment matters on which Defendants' Counsel ultimately conceded, Morasch's counsel incurred $279,370.00 in legal fees.  To account for the partial value of the summary judgment motions, Morasch seeks only $200,000.00 in sanctions as stated in Section V.F. below.  *Id.* ¶ 16.

A similar situation occurred later in the litigation when Morasch's counsel conferred with Defendants' Counsel regarding Morasch's intent to seek provisional process protection with regard to Mr. Ludwick's assets pending the outcome of this litigation.  Again, prior to preparing a motion, Morasch's counsel conferred with Defendants' Counsel.  *Id.* ¶ 17.    Defendants' Counsel represented that they would not agree to any of the provisional process relief requested by Morasch.  *Id.*  As such, Morasch's counsel incurred substantial time to conduct legal research, prepare declarations and exhibits, and write Plaintiff Morasch Meats, Inc.'s Motion for Issuance of Provisional Process (Docket No. 190).  *Id.*; *see also Plaintiff Morasch Meats, Inc.'s Motion for Issuance of Provisional Process* (Docket No. 190); *Declaration of Michael Morasch in Support of Plaintiff Morasch Meats, Inc.'s Motion for Issuance of Provisional Process* (Docket No. 191); *Declaration of Dayna J. Christian in Support of Plaintiff Morasch Meats, Inc.'s Motion for Issuance of Provisional Process* (Docket No. 192, with exhibits at Docket Nos. 192-1 through 192-5).  Shortly after the motion was filed, Defendants' Counsel called Morasch's counsel and agreed to stipulate to the requested preliminary injunction.  *Christian Decl.*, ¶ 17.  Again, despite Defendants' Counsel's ultimate concession on this issue, Morasch's counsel incurred $31,743.75 in legal fees to prepare its motion, as fully detailed in Section V.F. below;

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

again, these fees could have been entirely avoided if Defendants' Counsel had conferred in good faith, as required by this Court's Local Rules. *Id.*

D.    **Defendants' Counsel failed to submit proper responses to Morasch's Requests for Admissions.**

As an additional example of their improper conduct and unprofessionalism, Defendants' Counsel submitted sworn responses to Plaintiff's Requests for Admissions that failed to meaningfully address the requests and rendered this valuable evidentiary tool useless to Morasch. *Id.* ¶¶ 9, 10.  For example, prior to the Parties' summary judgment stipulations, a central issue in this case was whether Eric Lockovitch ("Mr. Lockovitch"), an independent contractor who worked with Defendants, had authority to negotiate, edit, and finalize the various versions of the Parties' contract on behalf of All Natural Freshness and Frevol. *Id.* ¶ 9; *see also Opinion and Order* (Docket No. 188), 2–3.  This issue was relevant to both Defendants' and Plaintiff's motions for summary judgment. *See Plaintiff's Motion for Summary Judgment*; *Defendants' Motion for Summary Judgment*.  To resolve this critical issue and avoid the need for fact finder deliberations, Morasch submitted Requests for Admissions to Mr. Ludwick and Frevol. *Christian Decl.*, ¶¶ 9, 10.  However, in avoidance of their responsibility to provide clear, concise, and truthful responses, Defendants' Counsel submitted the following retort on behalf of Mr. Ludwick:

> REQUEST 3: Admit that from 2013 to the present, you alone controlled the operations of Frevol.
>
> RESPONSE 3: Denied for the reason that Samantha Zwang [sic] was in charge of finding leads and performed important administrative functions for Frevol in China, including serving as translator. Adrian Staruszkiewicz, a professional engineer, performed mechanical engineering and technical inspection functions.  He also found machinists and recommended vendors to perform operational functions.  There were independent contractors whose operations were controlled by them and they were to perform in their individual professional areas of expertise, i.e., welding, electrical, tooling, CAD, in accord with those operations and the standards of operation in their particular areas.  Eric Lockovitch held the title of Vice President Business Development, and in that position operated in flagging and rejecting new businesses which seemed interested [sic] the use or purchase of HPP.  As such, Mr. Lockovitch served as a go-between businesses and the CEO, [Mr. Ludwick], on whether sales or service [sic] were a potentiality.  **To**

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

> **provide analogy, by qualification, Eric Lockovitch was the pirate who started but was not authorized to finish the parlay**. Only the higher officers, such as a person like Michael Morasch, the President of [Morasch], and the General Manager of Frevol, [Mr. Ludwick] were officially authorized to enter into and execute vital agreements.

*Id.* ¶ 32, Ex. 5 at 2–3 (emphasis added). It was unprofessional for Defendants' Counsel to choose to answer this Request for Admission by referring to a key witness in the case as "the pirate who started but was not authorized to finish the parlay."[2]

Further, this response was unclear as to whether the request was denied or subject to a qualified admission, and it contained voluminous non-responsive content that was irrelevant to Morasch's specific and direct request. *See id.* ¶ 10. Such irreverent responses were persistent throughout each document submitted by Defendants' Counsel in response to Plaintiff's Requests for Admissions. *Id.* To remedy these largely valueless responses, Morasch's counsel handwrote edits to each set of responses, calling out every error and unclear response, as well as all improper and non-responsive content, in hopes of inspiring Defendants' Counsel to amend their responses. *Id.* ¶ 35, Ex. 7 at 2–41. Morasch's counsel incurred legal fees in the amount of $9,083.00 to prepare these Requests for Admissions, call attention to Defendants' Counsel's errors, and attempt to convince Defendants' Counsel to submit amended responses, as fully detailed in Section V.F. below. *Id.* ¶ 9. Despite these efforts, at least thirty percent of Morasch's carefully written Requests for Admissions were rendered virtually worthless by the conduct of Defendants' Counsel, and Morasch seeks $2,724.90 in sanctions to reflect that loss. *Id.*

**E.    Defendants' Counsel improperly accused Morasch's counsel of illegal wiretapping.**

As another example of the inefficiencies caused by Defendants' Counsel, Ms. Vocht caused unnecessary distraction and cost in November 2017 when she accused Morasch's counsel of illegally tape recording her during a telephone call. *Id.* ¶ 39, Ex. 11. Following a deposition

---

[2] Mr. Ludwick repeated the same phrase—that Mr. Lockovitch "was the pirate who started but was not authorized to finish the parlay"—in his responses to Request for Admission Nos. 3, 6, and 8. *Christian Decl.*, ¶ 33, Ex. 5 at 2–6. In its own responses, Frevol used the same "pirate" phrase in response to Request for Admission No. 2. *Id.* ¶ 34, Ex. 6 at 2–3.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

in this case, Morasch's counsel confronted Ms. Vocht with an email that she had previously sent regarding the scope of Mr. Lockovitch's authority, which was inconsistent with the position she was taking at that time. *Id.* ¶ 8. Ms. Vocht could not recall the content of her own email and mistakenly assumed that Morasch's counsel was reading from an illegal tape recording of a prior telephone call among counsel. *Id.* To defend themselves, Morasch's counsel had to stop working on motion practice, review their files, and address Ms. Vocht's very serious criminal allegation. *Id.* After several email exchanges, Ms. Vocht recalled that Morasch's counsel had in fact simply read her own email back to her and was not reading from an illegal wiretap transcript. *Id.* Again, Ms. Vocht distracted and diverted Morasch's counsel, and Morasch incurred unnecessary fees in the amount of $90.00 as more fully described in Section V.F. below because of her error. This amount reflects only the amount of fees charged to Morasch for the legal research required to respond to the baseless claim. The actual time and effort spent researching and conferring on this criminal allegation was not charged to Morasch. Morasch seeks sanctions in at least the amount of $90.00 but also asks the Court to consider an increased sanctions amount that more adequately addresses the seriousness of this irresponsible tactic and more adequately deters future similar conduct.

**F.     Defendants' Counsel failed to meaningfully confer regarding the Parties' pre-trial submissions, again causing Morasch's counsel to incur unnecessary time and fees.**

Defendants' Counsel also caused Morasch's counsel to incur needless fees by refusing to meaningfully confer regarding the Parties' pre-trial submissions. In preparation for the trial of this matter, the Court entered a Jury Trial Management Order directing the Parties to jointly submit one set of jury instructions for the Court's consideration. *See Jury Trial Management Order* (Docket No. 121). Defendants' Counsel refused to meaningfully participate in the drafting of the Court-ordered joint jury instructions and instead left Morasch's counsel to draft the entire submission. *Christian Decl.*, ¶ 18. Just days before the due date, Defendants' Counsel insisted upon adding jury instructions derived from outside jurisdictions, which were not formatted according to the Court's Jury Trial Management Order; further, these late-added

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

instructions contained typographical errors and unidentifiable characters, and they were not edited in any way to fit the needs of this case. *Id.* In an effort to salvage the joint submission, Morasch's counsel spent hours editing and formatting Defendants' Counsel's last-minute additions. *Id.* Mr. Trauman made no effort to participate in this process. *Id.*

When the trial was reset to July 10, 2018—as fully detailed below—the Court issued an updated Jury Trial Management Order and assigned a new due date to the joint jury instruction submission. *See Jury Trial Management Order* (Docket No. 186). Again, without the assistance or cooperation of Defendants' Counsel, Morasch's counsel alone reviewed, edited, and supplemented the jury instruction submission. *Christian Decl.*, ¶ 18. The lack of effort and participation by Defendants' Counsel placed the burden of submitting the jury instructions pleading entirely on Morasch's counsel and required Morasch to shoulder the burden alone. *Id.*

Consistent with the lack of cooperation from Defendants' Counsel on the jury instruction submission, Defendants' Counsel also refused to meaningfully participate in resolving objections to Defendants' trial exhibits. *Id.* ¶ 19. Defendants' trial exhibits were riddled with errors and omitted materials that required Morasch's counsel to incur many hours to evaluate and state objections to all but thirteen of the 125 trial exhibits submitted by Defendants' Counsel for use at trial. *Id.* Morasch's counsel painstakingly detailed the categories of objections for Defendants' Counsel to aid in resolving this matter. *Id.* ¶ 43, Ex. 15. Rather than meaningfully conferring, Defendants' Counsel did nothing to address their trial exhibits. *Id.* ¶ 19.

Morasch incurred $21,518.00 in fees to prepare and edit the jury instructions that should have been prepared jointly and to address Defendants' objectionable trial exhibit submission. Morasch seeks half of that amount, $10,759.00 as an appropriate measure of sanctions as more fully detailed in Section V.F. below. *Id.* ¶¶ 18–20.

**G.    Defendants' Counsel engaged in improper tactics to delay and avoid the trial of this matter, again needlessly increasing Morasch's litigation expenses.**

Finally, Defendants' Counsel engaged in improper tactics to delay and avoid the trial of this matter. In doing so, Defendants' Counsel forced Morasch's counsel to exert substantial

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

efforts and incur significant legal fees that would never have been necessary if Defendants'
Counsel had not employed inappropriate and unprofessional tactics to prevent Morasch from
having its case heard and decided by a jury before this Court.

First, Defendants' Counsel delayed and avoided the trial of this matter using Mr.
Trauman's asserted plan to take paternity leave.  On October 25, 2017, this Court set the two-
week trial of this matter to begin on March 27, 2018, with the pre-trial conference occurring on
March 19, 2018.  *Order* (Docket No. 120).  These dates were discussed among and agreed to by
all counsel.  *Christian Decl.*, ¶ 21.  In mid-February 2018—four months later, and on the eve of
the long-planned trial dates—Mr. Trauman for the first time informed Morasch's counsel and the
Court that he was expecting a baby during the long-established trial dates and requested a set
over.  *Id.*  Mr. Trauman represented to the Court that a lengthy delay was necessary because he
planned to take full parental leave and played such a critical role in the defense's case that no
other attorney at his firm (or elsewhere) could replace him.  *Id.*  On March 1, 2018—over
Morasch's strong objections—the Court postponed the trial of this matter for over three months
to accommodate Mr. Trauman's schedule, setting it to begin on July 10, 2018.  *See Minutes of
Proceedings* (Docket No. 185).

At that time, Morasch's counsel had already completed and filed two rounds of pre-trial
submissions[3] pursuant to the Court's Jury Trial Management Order (Docket No. 121), as well as
engaged in other work to prepare for the imminent trial of this matter.  *Christian Decl.*, ¶ 22.  As

---

[3] Before the set over, Morasch's counsel had prepared and filed: (1) Plaintiff Morasch Meats,
Inc.'s Deposition Designations (Docket No. 162); (2) Plaintiff Morasch Meats, Inc.'s Exhibit
List (Docket No. 163) and trial exhibits; (3) Plaintiff Morasch Meats, Inc.'s Witness Statements
(Docket No. 164); (4) Plaintiff Morasch Meats, Inc.'s Itemized List of Special Damages (Docket
No. 165); (5) Plaintiff Morasch Meats, Inc.'s Trial Memorandum (Docket No. 166); (6) the
Proposed Joint Jury Instructions (Docket No. 171); (7) Plaintiff Morasch Meats, Inc.'s Proposed
Verdict Form (Docket No. 172); (8) Plaintiff Morasch Meats, Inc.'s Proposed Voir Dire
Questions (Docket No. 173); (9) Plaintiff Morasch Meats, Inc.'s Objections to Defendants' Trial
Exhibits (Docket No. 174); (10) Plaintiff Morasch Meats, Inc.'s Objections to Defendants'
Witness Statements (Docket No. 175); (11) Plaintiff Morasch Meats, Inc.'s Objections to
Defendants' Deposition Designations (Docket Nos. 176, 177, and 177-1 through 177-4); and
(12) Plaintiff Morasch Meats, Inc.'s Motions in Limine (Docket Nos. 178, 179, and 179-1
through 179-3).

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

a direct result of the set over sought by Mr. Trauman, Morasch's counsel incurred $81,945.38 in legal fees to complete work that would now need to be revisited and supplemented at a later date, causing additional fees to accrue. *Id.* Of that total, Morasch seeks only twenty-percent in sanctions, totaling $16,389.08; Morasch estimates that this was the percentage of lost value in the work resulting from the delay. Morasch's counsel subsequently learned that Mr. Trauman had misrepresented his paternity leave plans to the Court and in fact returned to work after only a brief time off following the birth of his child. *Id.*

On May 1, 2018—after the trial had been set over to accommodate his schedule—Mr. Trauman again sought to avoid the long-pending trial of this matter by filing a motion to withdraw himself and his law firm as counsel of record for Defendants. *See Motion of Motschenbacher & Blattner LLP to Withdraw as Counsel of Record for Defendants* (Docket No. 197). In that motion, Mr. Trauman claimed that Defendants had consented to his withdrawal and used the set over that he had previously secured to argue that the newly delayed trial date "[left] ample time for Defendants to secure substitute counsel." *Id.* at 2. He further stated—in direct contrast to his prior representations to the Court regarding the irreplaceable nature of his role in the defense's case—that he was "acting as local counsel only and Roy, Shecter & Vocht, P.C., will be primarily handling the trial." *Id.* Prior to filing this motion, Mr. Trauman did not confer with or in any way notify Morasch's counsel of his intent to withdraw. *Christian Decl.*, ¶ 23. Ms. Vocht subsequently informed Morasch's counsel that Mr. Trauman's motion made a critical misrepresentation to the Court regarding Defendants' consent to his withdrawal; according to Ms. Vocht, she was not aware of Defendants consenting to the filing of his motion to withdraw and intended to notify the Court that Defendants did not consent to the motion. *Id.*

The Court held telephonic oral argument on Mr. Trauman's motion to withdraw on May 4, 2018. *See Order* (Docket No. 199). At that hearing, the Court admonished Defendants' Counsel to obtain new local counsel and provided them with twenty days in which to do so; it further informed them that it would grant Mr. Trauman's motion to withdraw if new counsel did not appear within that time. *See Minutes of Proceedings* (Docket No. 200). At no point during

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

the hearing did Mr. Trauman or Ms. Vocht attempt to correct Mr. Trauman's misrepresentation to the Court regarding Defendants' consent to his withdrawal. *Christian Decl.*, ¶ 23.

In yet another effort to avoid the trial of this matter, Defendants' Counsel made only bare minimum efforts to obtain new local counsel, despite their full knowledge of the fact that failure to do so would result in an entry of default against Frevol and All Natural Freshness. According to Ms. Vocht, Mr. Trauman made no effort whatsoever to aid her or her clients in finding local counsel despite the fact that he created the situation and was best positioned to find available local counsel to aid Defendants. *Id*. ¶ 24  Morasch's counsel conferred with Defendants' Counsel on multiple occasions regarding their intent to seek entry of default and default judgment against the entity Defendants if new local counsel did not appear within the time set by the Court. *Id*.  During each conference, Defendants' Counsel indicated that although they could not agree to a default, they did not oppose the request nor did they discourage Morasch's counsel from filing such a motion. *Id.*  Defendants' Counsel never indicated that any Defendant was considering filing for bankruptcy, nor did they ever indicate to this Court that Defendants did not wish to proceed with having the case against them heard before it despite having clearing communicated that to Morasch's counsel. *Id.* ¶ 25.  On May 24, 2018, Ms. Vocht notified the Court that Defendants would not appear with new local counsel and her *pro hac vice* status was therefore ending. *Id.* ¶ 41, Ex. 13.

Based on their conferences with Defendants' Counsel, Morasch's counsel spent time and incurred fees to prepare and file Plaintiff Morasch Meats, Inc.'s Motion for Entry of Default and Default Judgment Against Defendants Frevol HPP, LLC and All Natural Freshness, Inc. Only (Docket No. 207) ("Motion for Default"). *Id.* ¶ 26.  On May 31, 2018, the Court held a telephone conference to discuss Defendants' Counsel's failure to obtain new local counsel, as well as the Motion for Default. *See Minutes of Proceedings* (Docket No. 216).  During that telephone conference, the Court waived Local Rule 83-3(a)(1)'s local counsel requirement, ordered Ms. Vocht to "proceed as representing Defendants without local counsel," and denied Plaintiff's Motion for Default as moot. *See id.*  At no point during this hearing did Ms. Vocht

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

indicate that she did not wish to move forward with representing Defendants (despite having communicated that to Morasch's counsel), that Defendants did not wish to move forward with having the case against them heard by this Court, or that the Defendants were about to file bankruptcy and have a stay imposed on the litigation. *Christian Decl.*, ¶ 26.  This was true even though—unbeknownst to Morasch's counsel and this Court—Mr. Ludwick had completed his required pre-bankruptcy credit counseling on May 29, 2018 (two days before the hearing), clearly indicating that he had already decided to file bankruptcy. *Id.* ¶ 26; *id.* ¶ 42, Ex. 14.

Instead of being forthcoming with the information that Mr. Ludwick and his entities had decided to file for bankruptcy and have a stay imposed on the litigation, Ms. Vocht knowingly let Morasch's counsel continue to exert efforts and incur substantial fees to prepare pre-trial submissions[4] and conduct preparations for the fast-approaching trial. *Id.* ¶¶ 27, 28.  Further— despite her knowledge that Defendants were about to file bankruptcy and the litigation would be stayed—during meet-and-confer conversations, Ms. Vocht said nothing to discourage Morasch's counsel from incurring additional time and fees to research, prepare, and file Plaintiff Morasch Meats, Inc.'s Motion for Reconsideration of its Motion for Default (Docket No. 245) and/or the Reply in support thereof (Docket No. 249).  *Id.* ¶ 27.  In sum, Morasch's counsel incurred

---

[4] Between May 29, 2018 and June 19, 2018, Defendants' Counsel knowingly let Morasch's counsel incur wasted time and fees to prepare and file the following pleadings, which were due under the Court's updated Jury Trial Management Order (Docket No. 186): (1) Plaintiff Morasch Meats, Inc.'s Supplemental Exhibit List and trial exhibits (Docket No. 211); (2) Plaintiff Morasch Meats, Inc.'s Supplemental Witness Statements (Docket No. 212); (3) Plaintiff Morasch Meats, Inc.'s Supplemental Itemized List of Special Damages (Docket No. 213); (4) Plaintiff Morasch Meats, Inc.'s Supplemental Deposition Designations (Docket No. 214); (5) Plaintiff Morasch Meats, Inc.'s Supplemental Trial Memorandum (Docket No. 215); (6) Plaintiff Morasch Meats, Inc.'s Supplemental Motions in Limine (Docket Nos. 228, 229, and 229-1 through 229-2); (7) Plaintiff Morasch Meats, Inc.'s Supplemental Proposed Voir Dire Questions (Docket No. 230); (8) Plaintiff Morasch Meats, Inc.'s Supplemental Proposed Verdict Form (Docket No. 231); (9) Plaintiff Morasch Meats, Inc.'s Supplemental Objections to Defendants' Supplemental Witness Statements (Docket No. 232); (10) Plaintiff Morasch Meats, Inc.'s Supplemental Objections to Defendants' Supplemental Exhibit List (Docket No. 233); (11) Plaintiff Morasch Meats, Inc.'s Supplemental Objections to Defendants' Supplemental Deposition Designations (Docket Nos. 234, 235, and 235-1); (12) the Supplemental Proposed Joint Jury Instructions (Docket No. 236); (13) Plaintiff Morasch Meats, Inc.'s Witness List (Docket No. 239); and (14) Plaintiff Morasch Meats, Inc.'s Response to Defendants' Supplemental Motion for Daubert Exclusion and in Limine (Docket Nos. 240 and 241).

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

$29,725.00 in legal fees for the default motions that could have been avoided if Defendants'
Counsel had been forthcoming about Defendants' intent to file bankruptcy and place a stay on
this litigation as early as May 29, 2018, as fully detailed in Section V.F. below. *Id*. Morasch
also incurred fees for pre-trial work from May 29, 2018 through June 21, 2018 (the date on
which the bankruptcy stay was imposed), which was entirely unnecessary since Defendants'
Counsel knew that Defendants were preparing to file bankruptcy and stay the litigation. Those
fees total $103,303.08, as fully detailed in Section V.F. below. *Id*.

## V.  <u>MEMORANDUM OF LAW</u>

### A.  <u>The Applicable Rules</u>

"District courts have the inherent power to sanction a lawyer for a 'full range of litigation
abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). When an attorney's work product falls
below the acceptable standards set out in the applicable rules, the Court is well within its power
to address such failures and deter further abuses. Here, as fully described below, Morasch seeks
the imposition of penalties to address Defendants' Counsel's failure to meet the minimum
standards set forth in FRCP 11; the Oregon District Court's Local Rules 83-3 and 83-7; and the
Oregon District Court's Statement of Professionalism.

### 1.  <u>Federal Rule of Civil Procedure 11</u>

FRCP 11 is intended to emphasize an attorney's responsibilities in submitting pleadings,
motions, and other papers to the Court and reinforce compliance with those responsibilities with
the imposition of sanctions. *See* FRCP 11 advisory committee notes (1983 amendment); *see also*
FRCP 11(b). Sanctions are generally appropriate when a court determines that FRCP 11(b) has
been violated. FRCP 11(c)(1). If a party believes that opposing counsel is using motion
practice, pleadings, and/or submission of other papers as a harassment tool for the improper
purpose of delaying or needlessly increasing the cost of litigation, that party may call upon the
court to consider sanctions. *See* FRCP 11(b)(1); *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d

1156, 1159 (9th Cir. 1987) ("Sanctions are mandatory if the court concludes that Rule 11 has been violated.").

FRCP 11 requires "reasonable inquiry" into the law and facts asserted by counsel to ensure that all pleadings "filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (internal citations omitted). This rule creates an "affirmative duty of investigation both as to law and fact" before making any filing with the court. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987). In summary, FRCP 11's prohibition on improper filings places "three duties" on attorneys. *St. Amant v. Bernard*, 859 F.2d 379, 382 (5th Cir. 1988); *see also* FRCP 11(b). First, "counsel must make a reasonable inquiry into the factual basis of any pleading, motion, or other paper." *St. Amant*, 859 F.2d at 382; FRCP 11(b)(3). Second, "counsel must make a reasonable inquiry into the law." *St. Amant*, 859 F.2d at 382; FRCP 11(b)(2). Third, "counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation." *St. Amant*, 859 F.2d at 382; FRCP 11(b)(1). By signing a pleading, an attorney certifies that: (1) the motion is not being presented for an "improper purpose"; (2) the legal contentions contained therein are "warranted by existing law"; (3) the "factual contentions have evidentiary support"; and (4) "the denials of factual contentions" are equally warranted. FRCP 11(b)(1)–(4). These basic certifications preserve the integrity of litigation, ensuring that lawyers do not resort to "baseless filings" and other such "abuses." *Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*, 498 U.S. 533, 553 (1991).

"The reasonableness of [counsel's] inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others." *Franklin v. Pinnacle Entm't, Inc.*, 289 F.R.D. 278, 286 (E.D. Mo. 2012) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010)). To constitute a "frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe*, 910

Page 23 of 35 – PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

F.2d 1043, 1047 (2d Cir. 1990).  Importantly, sanctionable filings need not be wholly meritless; sanctions may be imposed for unsupported allegations in a filing, even when that same filing includes at least one non-frivolous theory.  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363–66 (9th Cir. 1990).

Sanctions may be imposed when "'no reasonably competent attorney could conclude that [a claim] has a reasonable evidentiary basis.'"  *Franklin*, 289 F.R.D. at 286 (quoting *Thompson*, 610 F.3d at 665).  "'[W]here no evidence or only 'patently frivolous' evidence is offered to support factual contentions,'" a court will impose sanctions.  *Id.*

Upon finding that counsel has violated FRCP 11(b), a court's broad discretion allows it to fashion a sanction as necessary "to deter repetition of the conduct," which may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  FRCP 11(c)(4).  Sanctions may be monetary, such as payment of the opposing party's fees or fines to the court; they may also be non-monetary, in the form of striking pleadings, requiring amended pleadings, or requiring counsel to attend educational courses.  *See Franklin*, 289 F.R.D. at 290–91.  A court may also determine whether the party or the party's counsel will be required to comply with the ordered sanctions. *Id.* at 290 (noting that the filing attorney would be sanctioned because there was "no indication the individual plaintiffs had any control over" the attorney's conduct).

### 2.    Local Rule 83-3, Local Rule 83-7, and the Oregon District Court's Statement of Professionalism

In addition to the FRCP 11 requirements, attorneys granted *pro hac vice* admission to the Oregon District Court certify that they have "read and understand the requirement of LR 83-3" and will associate with local counsel who makes the same certification.  *See Application for Special Admission – Pro Hac Vice* (Docket No. 37); *Order* (Docket No. 43) (Court action approving Ms. Vocht's *pro hac vice* application).  Local Rule 83-3 requires that local counsel will "meaningfully participate in the preparation and trial of the case."  Local Rule 83-3(a)(1).

All attorneys practicing law before this Court are required to "[b]e familiar and comply

with the Oregon State Bar Standards of Professional Conduct and this Court's Statement of Professionalism." Local Rule 83-7(a). Attorneys have an obligation to maintain the respect due to this Court and discharge their duties "with the honesty, care, and decorum required for the fair and efficient administration of justice." Local Rule 83-7(b)–(c).

The Statement of Professionalism "applies to all attorneys" and includes a duty to practice with "integrity, courtesy, honesty, and willing compliance with the highest ethical standards." STATEMENT OF PROFESSIONALISM: GENERAL GUIDELINES. The professionalism guidelines require a commitment to "promote the integrity, dignity, independent judgment, effectiveness, and efficiency of the legal system." *Id.* § 1.1. Like FRCP 11, the guidelines require an oath to "not knowingly misstate facts or law . . . [or] cause a person to form a mistaken conclusion of facts or law" and to "refrain from asserting untenable positions." *Id.* §§ 1.9, 1.11. Falling below these standards and the FRCP 11 standards exposes a party, its counsel, and their respective law firms to sanctions. Because Morasch believes that Defendants' Counsel has failed to meet these minimum standards, as described above and further detailed below, Morasch is entitled to the relief that it seeks in this Motion for Sanctions.

**B.** **Defendants' Motion to Dismiss failed to meet the minimum standards for pleadings, and sanctions are warranted.**

Defendants' Motion to Dismiss contained numerous unwarranted legal contentions, unsupported and incorrect fact allegations, indecipherable arguments, typographical errors, and other inaccuracies. *See generally Motion to Dismiss.* Ultimately, this Court denied Defendants' Motion to Dismiss in its entirety. *See Opinion and Order* (Docket No. 188), 3–8. Despite the unfounded nature of the Motion to Dismiss, Morasch had to pour considerable time and financial resources into preparing and filing Plaintiff's Response to Defendants' Amended Motion Under Fed.R.Civ.Pro. 12(B)(6) – Statute of Limitations Fraud (Docket No. 142) ("Plaintiff's Response to the Motion to Dismiss"), all of which would have been unnecessary had Defendants' Counsel conformed to the basic standards set by FRCP 11(b), Local Rules 83-3 and 83-7, and the Oregon District Court's Statement of Professionalism. For this reason, sanctions are warranted.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Plaintiff's Response to the Motion to Dismiss highlights the many inaccuracies contained within the pleading filed by Defendants' Counsel.  *See generally Plaintiff's Response to the Motion to Dismiss*.  Morasch hereby incorporates by reference each of the errors of law and fact detailed in Plaintiff's Response to the Motion to Dismiss as if fully restated herein.  As a summary, Defendants' Counsel's errors included but were not limited to the following:

- Defendants' Counsel filed their Motion to Dismiss only *after* previously stipulating to the filing of Plaintiff's Second Amended Complaint, which contained the fraud claim disputed in the Motion to Dismiss.  *See Stipulated Motion for Leave to File Second Amended Complaint* (Docket No. 123).  Defendants conceded to the filing of the Second Amended Complaint and then challenged the viability of the pleading's fraud claim, resulting in an inefficient and expensive Motion to Dismiss.

- Defendants' Counsel misstated the standard of review for their Motion to Dismiss in at least two ways.  First, Defendants' Counsel instructed this Court to grant a motion to amend, even though no such motion was pending.  *Motion to Dismiss*, 3–4.  Second, Defendants' Counsel instructed this Court to apply the *de novo* standard of review, even though this Court is not a court of review but a court of first impression on the Motion to Dismiss.  *See id.* at 4.

- Defendants' Counsel urged this Court to rely on the inapplicable and outdated decision in *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050 (9th Cir. 2005), *amended and superseded by* 416 F.3d 940 (9th Cir. 2005).  *See Motion to Dismiss*, 3–4.

- Defendants' Counsel failed to include the controlling three-part test for determining whether a plaintiff has suffered a "legally cognizable harm" for purposes of pleading a viable fraud claim, as set forth by the Oregon Supreme Court in *Gaston v. Parsons*, 318 Or. 247, 255–56 (1994).  *See Motion to Dismiss*, 4–5.  Rather than addressing this fundamental issue in challenging the fraud claim's statute of limitations, Defendants' Counsel instead simply stated that the "point in time of discovery of the fraud was known in 2013"—a statement that is not supported by any factual allegations.  *See id.* at 5.

- Defendants' Counsel directed the Court to a protracted discussion of cases pertaining to the medical malpractice statute of limitations, when the operative statute of limitations is entirely distinguishable and appears at ORS 12.110.  *See id.* at 4–5.

- Defendants' Counsel neglected to inform the Court that in their discussion of the legislative history of the fraud statute of limitations, they largely relied upon the dissenting opinion in *Gaston v. Parsons*.  *See id.*

- Defendants' Counsel made repeated factual assertions with no support to the record.  *See, e.g., id.* at 8 n.6.

- Defendants' Counsel directed the Court to a paragraph of the purported Second Amended Complaint that addressed "bulletproof glass," but no such phrase appears anywhere in the Second Amended Complaint.  *Id.* at 12; *see Second Amended Complaint* (Docket No. 125).

These errors, misstatements, and unsupported allegations created a burden upon

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Morasch's counsel to locate errors, highlight those errors, and offer this Court correct statements of law and/or fact, instead of allowing Morasch's counsel to simply advocate for Morasch in Plaintiff's Response to the Motion to Dismiss.  This created inefficiencies and resulted in unnecessary costs to Morasch, in direct contravention of the purposes underlying FRCP 11 and this Court's Local Rules.  Accordingly, sanctions in the amount of $32,818.00 as stated in Section V.F. below, are appropriate and should be awarded by this Court.

**C.**    **Defendants' Motion for Summary Judgment failed to meet the minimum standards for pleadings, and sanctions are warranted.**

The quality of Defendants' Motion for Summary Judgment also displays Defendants' Counsel's inattention to factual detail and legal accuracy.  This Court ultimately denied Defendants' Motion for Summary Judgment, except to remove All Natural Freshness from the breach of contract claim pursuant to the Parties' stipulations.  *See Opinion and Order* (Docket No. 188).  Again, despite the unsubstantiated nature of Defendants' Counsel's legal arguments, Morasch's counsel was forced to research, resolve, and explain to this Court numerous legal and factual inaccuracies in Plaintiff Morasch Meats, Inc.'s Amended Response to Defendants' Motion for Summary Judgment–Counts I and II (Docket No. 150) ("Plaintiff's Response to Defendants' Motion for Summary Judgment").  Morasch hereby incorporates by reference each of the errors of law and fact set forth in Plaintiff's Response to Defendants' Motion for Summary Judgment as if fully restated herein.  The following summary highlights some but not all of the factual and legal misstatements contained in Defendants' Motion for Summary Judgment:

- Defendants' Counsel presented their motion as a full summary judgment pleading, but the substance of the motion revealed that Defendants actually sought dispositive action only as to certain portions of Morasch's Second Amended Complaint.  *Motion for Summary Judgment*, 1, 28, 30, 38–42.

- Defendants' Counsel presented incomplete exhibits to support their arguments and failed to notify the Court when relevant information was excluded.  For example, Defendants' Counsel stated that All Natural Freshness was "not even mentioned in Exhibit 1" to the Second Amended Complaint, but failed to include or acknowledge the email that transmitted Exhibit 1, which contained an All Natural Freshness signature and logo.  *Id.* at 22.

- Defendants' Counsel relied upon statements from Mr. Ludwick's supporting declaration, but either cited to the wrong paragraph or failed to acknowledge that the sworn

statement did not match Defendants' Counsel's argument. For example, Defendants' Counsel cited to "Ludwick Dcl." without referencing a specific page or paragraph. *See, e.g.*, *id.* To aid the Court, Morasch's counsel directed the Court to the correct paragraph in Mr. Ludwick's declaration. *See Plaintiff's Response to Defendants' Motion for Summary Judgment*, 7. Unfortunately, the content of the referenced paragraph referred to a page that does not exist in the record. *See id.* Again, Morasch's counsel made its best effort to direct the Court to the correct location in the record. *See id.*

•     Defendants' Counsel referenced and quoted exhibits that were either misnamed, mis-numbered, or missing entirely. *Motion for Summary Judgment*, 3, 8, 22–23. Again, Morasch's counsel exerted its best effort to correct these errors throughout its briefing to this Court. *See Plaintiff's Response to Defendants' Motion for Summary Judgment*, 7–9, 14, 22, 33.

•     Defendants' Counsel represented that certain documents stood for a premise tied to a specific time, but neglected to inform the Court when they originated during an entirely different period. For example, Defendants' Counsel stated that "Plaintiff knew and accepted that [Mr. Lockovitch] did not have authority to execute the contract." *Motion for Summary Judgment*, 23 (erroneously citing to Exhibit 28). In fact, Morasch's counsel believes that Defendants' Counsel intended to refer to their Exhibit 29, which is an email sent more than a year after the relevant time period for determining Morasch's knowledge of Mr. Lockovitch's authority. *See Plaintiff's Response to Defendants' Motion for Summary Judgment*, 14.

•     Defendants' Counsel asked the Court to determine which contract and terms apply to and govern the Parties' contractual relationship, yet they provided no guidance with regard to what Defendants believed to be the operative contract or terms. *See Motion for Summary Judgment*, 27–30.

•     Defendants' Counsel again raised their statute of frauds affirmative defense, which they previously stipulated was inapplicable to the facts of this case. *Christian Decl.*, ¶ 23, Ex. 12. By arguing that nothing "smack[ed] of an electronic signature" in a manner sufficient to bind All Natural Freshness to the Parties' contract, Defendants' Counsel seemingly revived its abandoned statute of frauds affirmative defense. *See Motion for Summary Judgment*, 21.

•     Defendants' Counsel jumbled key arguments, forcing Morasch's counsel to decipher the confusion to aid the Court. For example, Defendants' Counsel blended various sections of the Parties' contract in an effort to persuade the Court to invalidate its installation due date and late penalties. *Id.* at 5–9, 24–27. It took Morasch's counsel twelve pages to make sense of this convoluted argument and explain Defendants' Counsel's errors and unsupported assertions. *Plaintiff's Response to Defendants' Motion for Summary Judgment*, 20–32.

•     Defendants' Counsel included multiple pages of unsupported facts in its argument regarding Morasch's fraud claim, but they provided virtually no citation to the record in support of these alleged facts. *See Motion for Summary Judgment*, 30–38. To fully respond to Defendants' Counsel's factual allegations, Morasch's counsel was required to create two tables identifying each factual statement, setting forth corrected citations to the record, and rebutting or correcting inaccuracies. *Declaration of Dayna J. Christian in Support of Plaintiff Morasch Meats, Inc.'s Response to Defendants' Motion for Summary Judgment–Counts I and II*, ¶ 52, Ex. A (Docket No. 148-44); *id.* ¶ 53, Ex. B (Docket No. 148-45).

•     Defendants' Counsel misrepresented Oregon law governing fraud claims, requiring Morasch's counsel to correct various misrepresentations and provide accurate case law on these points. *Motion for Summary Judgment*, 30–38.

Defendants' Motion for Summary Judgment forced Morasch's counsel to exert

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

substantial effort engaging in tasks they simply should not have to complete.  As detailed above, the errors in Defendants' Motion for Summary Judgment caused Morasch to incur significant fees while its counsel corrected factual misstatements, researched and responded to outdated case law, labored over indecipherable legal arguments, and wrote a comprehensive brief correcting Defendants' Counsel's repeated errors.  This briefing was so complex it required Morasch to request this Court's leave for additional pages in which to complete its response, resulting in a forty-eight-page brief supported by two lengthy declarations and forty-five exhibits.

Under FRCP 11, Defendants' Counsel should have never signed or filed their Motion for Summary Judgment.  Prior to presenting their Motion for Summary Judgment to the Court, Defendants' Counsel was required to exercise their duty of professionalism, diligently review the factual record, and ensure that their legal contentions were warranted under Oregon law.  They failed to do so, resulting in considerable inefficiency and cost for Morasch and its counsel.  For these reasons, sanctions in the amount of $200,000.00 as more fully described in Section V.F. below, are appropriate and should be awarded to Morasch.

**D.**     **Defendants' Counsel has disregarded the Local Rules.**

Defendants' Counsel's conduct and filings as described above were unreasonable from the perspective of a competent attorney admitted to practice before the Oregon District Court and fell below the standard of professionalism required by the Local Rules.  As clearly set forth above, Defendants' Counsel's motions and pleadings have frequently asserted factually baseless claims and contained egregious errors of law that demonstrated a consistent pattern of carelessness and unprofessionalism.

When faced with a strikingly similar situation, the United States District Court for the Eastern District of Missouri issued an award of sanctions.  In *Franklin v. Pinnacle Entertainment, Inc.*, an attorney was sanctioned for multiple reasons, including: serious filing errors and omissions; knowing advocacy of a factually baseless claim; and demonstrating a general "lack of care" as "part of a pattern" in which most documents filed by the attorney were

"riddled with egregious typographical errors and basic grammatical errors." *Franklin*, 289 F.R.D. at 280, 288, 290. The *Franklin* court concluded that the attorney was either unable or unwilling to comply with the relevant FRCPs and Local Rules and determined that the offending pleadings were "unnecessarily burdensome." *Id.* at 290 (stating that the attorney's errors and vague, imprecise assertions required the court to "spend an unusual amount of time" trying to ascertain the assertions raised by counsel in his pleadings). The *Franklin* court stated that the offending attorney should "know the importance of accuracy in the pleadings and other documents he files with the Court, and of complying with Court rules and procedures." *Id.*

The pleadings submitted by Defendants' Counsel are similarly disrespectful to Morasch and this Court. They demonstrate a consistent lack of care that adversely impacted this Court's ability to fairly and efficiently administer justice, in direct violation of the Local Rules. *See* Local Rule 83-7(b)–(c). As fully explained above, Defendants' Counsel's legal arguments have often been indecipherable and unsubstantiated, and their pleadings have frequently referenced inaccurate exhibits and unsupportive citations; further, many of their arguments cited to no factual basis whatsoever. As a result, Morasch's counsel has spent countless hours analyzing the many theories Defendants' Counsel *may* have been asserting, finding and correcting errors contained in Defendants' Counsel's arguments, and putting forth their best effort to offer this Court accurate evidence and legal authorities to dispose of Defendants' Counsel's arguments. Such conduct was subject to sanctions in *Franklin*, and the same result should apply in the present case. *See Franklin*, 289 F.R.D. at 290.

Relatedly, throughout this litigation Morasch's counsel had very limited contact with Ms. Vocht's local counsel, Mr. Trauman. The degree of communication with Mr. Trauman led Morasch's counsel to conclude that he was wholly detached from this case, even prior to his withdrawal as counsel of record for Defendants. *Christian Decl.*, ¶ 28. If that was the case, Mr. Trauman was in direct violation of FRCP 11 and Local Rule 83. Even if Mr. Trauman was guiding Ms. Vocht in accordance with his responsibilities under Local Rule 83-7, his conduct still failed to meet the minimum standards of professionalism, as he endorsed many deficient

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

filings that unnecessarily increased the cost of litigation and created vast inefficiencies for Morasch and this Court. Further, according to Ms. Vocht, upon his withdrawal as local counsel Mr. Trauman made no effort whatsoever to aid her or Defendants in finding new local counsel, despite the fact that he was responsible for creating the circumstances necessitating new local counsel and was best positioned to find available local counsel to aid Defendants. *Id.* ¶ 24.

Defendants' Counsel's filings and conduct throughout this litigation demonstrate a disregard for the requirements of FRCP 11, Local Rule 83, and the Oregon District Court's Statement of Professionalism. Defendants' Counsel's pleadings are plagued with typographical errors, erroneous record citations, misstatements of fact, unsupported allegations and legal conclusions, and incomplete sentences and citations. Defendants' Counsel has violated this Court's directive to "solve problems, not create or exacerbate them." STATEMENT OF PROFESSIONALISM: GENERAL GUIDELINES § 1.13. Defendants' Counsel's pleadings and conduct have exacerbated the legal work required by this Court and have caused unnecessary and excessive cost to Morasch, for which it seeks the imposition of sanctions detailed below.

### E.    Morasch is entitled to an imposition of sanctions against Defendants' Counsel.

For Defendants' Counsel's conduct, pleadings, and motions that violate FRCP 11 and/or this Court's Local Rules and Statement of Professionalism, Morasch seeks:

• To respond to and argue Defendants' Motion for Leave to Amend Counterclaim (Docket No. 100), Morasch incurred fees in the amount of $13,785.00. Morasch does not seek an imposition of monetary sanctions because the motion was withdrawn by Defendants' Counsel after it had been fully briefed and argued. Instead, Morasch asks that Defendants' Counsel be admonished for improper and unsupported motion practice.

• As a result of Defendants' Counsel's filing of Defendants' Motion for Protective Order (Docket No. 104), Morasch incurred **$5,962.50** in fees. As fully described in Section IV above, this motion was entirely unsupported by Oregon law, Morasch's counsel clearly explained that to Defendants' Counsel before the motion was filed, and the motion was summarily denied by this Court. The full measure of Morasch's counsel's fees in responding to this motion is an appropriate sanction against Defendants' Counsel because the motion was entirely unsupported by the applicable laws, and neither Morasch, Defendants, nor the litigation process derived any value from the filing of this motion.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

•       Defendants' Counsel's demand to take post-discovery de bene esse depositions was likewise unsupported by Oregon law and ultimately conceded by Defendants' Counsel after Morasch's counsel incurred time and fees to research and educate them on this issue, as fully described in Section IV above.  Morasch incurred a total of **$1,365.00** in fees in responding to Defendants' Counsel's improper demand for post-discovery depositions and requests that this full amount be imposed as a sanction against Defendants' Counsel.

•       Throughout the litigation, Defendants' Counsel has produced documents with missing and duplicated Bates Numbers, as fully described in Section IV above.  Morasch's counsel was required to incur **$2,655.00** in fees to correct these errors and assist Defendants' Counsel in properly producing documents.  Morasch is entitled to recover these fees, as they represent increased costs that were the direct result of Defendants' Counsel's inefficiency and lack of professionalism.

•       Morasch incurred **$32,818.00** in fees to confer regarding, brief, respond, and reply to Defendants' Motion to Dismiss.  Morasch is entitled to a sanctions award in this full amount because the motion was riddled with errors, inaccuracies, and was entirely unsupported by the applicable laws, as fully described in Sections V.B. above.

•       The Parties' motions for summary judgment contained cross-motions on topics that were ultimately conceded by Defendants' Counsel as fully described in Sections V.C above.   Morasch incurred $279,370.00 in total on both Parties' motions for summary judgment.  Of that amount, Morasch requests that Defendants' Counsel be sanctioned $200,000.00, which is roughly seventy-five percent of the total fees.  Morasch approximates to the best of its ability that at least half of the combined fees (roughly $140,000.00) for these motions reflect the fees incurred by Morasch to respond to Defendants' Counsel's unsupported, erroneous, and inaccurate motion.  Another twenty-five percent of the fees (roughly $60,000.00) were incurred for issues in Morasch's own motion and reply that were ultimately conceded by Defendants' Counsel, rendering these efforts unnecessary.  Morasch does not seek sanctions for the remainder of the total fees, as that amount reflects the fees generated by the valuable aspects of this motion practice.  Morasch is entitled to sanctions for all work that could have been avoided if Defendants' Counsel had properly conferred and adequately researched their positions before the motions were filed.  Morasch asks that at least **$200,000.00** be imposed as a sanction against Defendants' Counsel.

•       To challenge Defendants' Counsel's unauthorized additions to their Answer to the Second Amended Complaint (as fully described in Section IV above), Morasch incurred **$33,908.00** in fees.  Morasch should never have been required to incur these fees, nor should Morasch's counsel have been required to take time and resources away from trial preparations to challenge Defendants' Counsel's late and unauthorized addition of expanded affirmative defenses and a counterclaim.  Thus, it is appropriate to sanction Defendants' Counsel for the full amount of these fees.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

- Defendants' Counsel's responses to Plaintiff's Requests for Admissions were improper and rendered the value of this discovery tool virtually worthless, as fully described in Section IV above. Defendants' Counsel refused to supplement or amend their responses, and their cavalier and irresponsible responses warrant the imposition of sanctions. The preparation and conferring process on the Requests for Admissions served on each Defendant resulted in $9,083.00 in fees. Of that amount, Morasch estimates to the best of its ability that thirty percent of the Requests for Admissions' value was rendered useless. As such, Morasch seeks the imposition of **$2,724.90** in sanctions against Defendants' Counsel.

- Defendants' Counsel's false and derogatory allegation that Morasch's counsel engaged in an illegal wiretap (as fully detailed in Section IV above) caused Morasch to incur **$90.00** in fees to defend against this serious criminal allegation. This modest amount of fees does not reflect the unbilled time, effort, and distraction incurred by Morasch's counsel to research and address this very serious allegation. Morasch asks that the Court consider a sanctions award beyond the actual fees incurred by Morasch in an amount that the Court sees fit to deter similar future conduct.

- During pre-trial preparation, Morasch's counsel worked unsuccessfully to engage Defendants' Counsel in cooperating to draft the joint jury instruction submission and to resolve objections to the proposed trial exhibits. These efforts were unsuccessful, as fully described in Section IV above. These efforts caused Morasch to incur fees in the amount of $21,518.00. At least half of these fees could have been avoided if Defendants' Counsel had participated in good faith in the conferring process and/or had participated in the preparation of the joint submission. As such, sanctions in the amount of **$10,759.00** is appropriate.

- Morasch's request for provisional process (as fully described in Section IV above) is a further example of Defendants' Counsel's sanctionable conduct. Morasch's counsel conferred on the substance of the request, but Defendants' Counsel refused to consider the request until after the matter was fully briefed for the Court. Only then did Defendants' Counsel stipulate to the requested relief. The fees for this motion practice totaled **$31,743.75** and could have been avoided if Defendants' Counsel had made a good faith effort to confer with Morasch's counsel. Morasch seeks the imposition of monetary damages for the full amount of those fees.

- The trial delays caused by Defendants' Counsel's conduct caused Morasch to incur unnecessary fees in preparing the case for trial. In March 2018, Mr. Trauman sought and obtained a set-over of the trial date just weeks before trial, as fully described in Section IV above. Mr. Trauman had long known that he might become unavailable for trial, but he made no effort to assist Defendants in seeking aid to proceed to trial; Mr. Trauman then withdrew from the case. From January 2, 2018—when pre-trial preparations began in earnest—until the issuance of the trial continuance by the Court on March 1, 2018, Morasch incurred $81,945.38 in fees and costs. As a result of Mr. Trauman's late demand for a set over, Morasch estimates to the best of its ability that twenty percent of its pre-trial fees and costs were rendered valueless, which totals **$16,389.08**. Thus, sanctions in this amount are appropriate.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

• Mr. Trauman's request for a set-over of the trial appears to have been orchestrated to allow him room to withdraw as counsel, as fully described in Section IV above. His withdrawal led to a situation where default of the entity Defendants was mandatory, which required Morasch to incur $15,122.50 in fees to prepare and file the Motion for Default and $14,602.50 in fees to prepare and file the Motion for Reconsideration of the Motion for Default (Docket No. 245). These motion practice fees could have been avoided if Defendants' Counsel had been forthcoming with regard to their position in the case and intent to avoid proceeding to trial. Morasch is entitled to sanctions in each of those amounts, which totals **$29,725.00**.

• As fully described in Section IV above, Defendant Mr. Ludwick prepared to file for bankruptcy as early as May 29, 2018; despite this fact, Defendants' Counsel allowed Morasch to continue to prepare for trial until June 21, 2018 when the entire case was stayed by the United States Bankruptcy Court for the Western District of Michigan, just days before trial. Between these dates, Morasch incurred **$103,303.08** in pre-trial preparation fees and costs. These fees and costs are a direct result of Defendants' Counsel's abuse of the litigation process, and Morasch is entitled to that full measure of sanctions.

• The preparation of this Motion for Sanctions (both the originally filed motion and the supplemental motion) cost Morasch a total of **$40,927.50** in fees. Morasch seeks this full amount as a sanction against Defendants' Counsel.

In total, Morasch seeks the imposition of **$512,370.81** in sanctions against Defendants' Counsel, jointly and severally, for their combined efforts to violate Rule 11 and this Court's Local Rules. Morasch bore the very real cost of their behavior and conduct during the pendency of this litigation, and sanctions are appropriate.

## VI.  <u>CONCLUSION</u>

This case has been pending for over two years, with discovery concluding on October 16, 2017. *Order* (Docket No. 113); *Complaint* (Docket No. 1). Defendants' Counsel had more than adequate time to fully investigate and form comprehensive theories regarding Morasch's claims, Defendants' affirmative defenses, and all issues related thereto prior to bringing the motions and pleadings and engaging in the conduct that forms the basis of this Motion for Sanctions.

Morasch's counsel has no qualms about engaging in a robust litigation on the merits of this case. Here, however, the litigation has transformed into a seemingly endless chore of correcting misstatements, deciphering poorly articulated legal arguments, correcting legal

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

citations, and urging a non-Oregon attorney to better confer with local counsel.  While limited errors are understandable, the pervasive unprofessionalism and inaccuracies in Defendants' Counsel's conduct and pleadings rises to the level of sanctionable conduct and has unnecessarily increased Morasch's litigation costs and the length of Morasch's responsive filings.

 For the reasons stated herein, Morasch respectfully requests that this Court grant its Motion for Sanctions and impose sanctions in the amount of $512,370.81 against Defendants' Counsel pursuant to FRCP 11, as well as any other monetary or non-monetary relief the Court finds fit to impose.

 DATED: July 5, 2018

    IMMIX LAW GROUP PC


    Dayna J. Christian, OSB #97336
    Nicole McMillan, OSB #114573
    Immix Law Group PC
    600 NW Naito Parkway, Suite G
    Portland, Oregon 97209
    Phone: (503) 802-5533
    Fax: (503) 802-5351
    E-Mail: dayna.christian@immixlaw.com
    E-Mail: nicole.mcmillan@immixlaw.com

    Attorneys for Plaintiff Morasch Meats, Inc.

Page 35 of 35 – PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2018, I served a true copy of the foregoing **PLAINTIFF MORASCH MEATS, INC.'S SUPPLEMENTAL MOTION FOR SANCTIONS** on the attorney(s) listed below by the method(s) indicated below on said day.


Alexander C. Trauman                                                    *Via E-Mail*
Motschenbacher & Blattner LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
atrauman@portlaw.com


Michelle E. Vocht                                                       *Via E-Mail*
Roy, Shecter & Vocht, P.C.
707 S. Eton St.
Birmingham, MI 48009
vocht@rsmv.com
Attorneys for Defendants


IMMIX LAW GROUP PC


Dayna J. Christian, OSB #97336
Nicole McMillan, OSB #114573
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
Fax: (503) 802-5351
E-Mail: dayna.christian@immixlaw.com
E-Mail: nicole.mcmillan@immixlaw.com

Attorneys for Plaintiff Morasch Meats, Inc.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351